### State of Vermont v. Richard Thompson

[708 A.2d 192]

No. 96-183

Present: **Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 16, 1998

*John T. Quinn*, Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Robert Appel*, Defender General, *William A. Nelson*, Appellate Attorney, Montpelier, and *Larry S. Novins*, Public Defender, Middlebury, for Defendant-Appellant.

**Johnson, J.** Defendant, who received a one-year suspended sentence after entering a conditional no-contest plea to a charge of simple domestic assault, 13 V.S.A. § 1042, argues on appeal that the trial court erred in (1) finding him competent to stand trial and enter a plea, and (2) failing to engage in the colloquy required by V.R.Cr.P. 11(c). Because we agree with defendant's second argument, we vacate the plea and conviction without addressing his first argument.

At arraignment, after defense counsel stated that he had substantial questions about defendant's capacity to understand the proceedings, the district court ordered an out-patient evaluation of defendant's competency. The examining psychiatrist's report to the court, which was based on a one-hour interview, indicated that defendant is a person with mild mental retardation, having an intelligence quotient below 70. The report also noted that defendant is illiterate and has a history of alcohol abuse. According to the report, defendant has a severely limited fund of information and a severely compromised ability to engage in abstract reasoning.

The examining psychiatrist also addressed in his report, albeit briefly, defendant's understanding of the legal process and the specific

charge against him. The psychiatrist concluded that defendant was "marginally competent" to stand trial, but acknowledged that defendant's "incomplete understanding of the events of the assault as well as his mental limitations will undoubtedly handicap his defense preparation."

Both the psychiatrist and defendant testified at the competency hearing, held a few months later. The psychiatrist restated his conclusion that defendant was marginally competent. He testified that defendant had "sort of an understanding" of the legal issues, and opined that if the situation "were spelled out [defendant] could have a good global understanding of what he apparently or allegedly had done." The psychiatrist also stated that he thought defendant would be able to understand different aspects of the legal system if they were explained to him carefully. Based on the psychiatrist's testimony, and notwithstanding defendant's testimony demonstrating his limited understanding of the proceedings against him, the court found defendant competent to stand trial.

Seven months later, defendant appeared for a status conference before a different judge. Defense counsel informed the court that defendant did not want to have a trial, but expressed serious reservations about his client's level of understanding. Counsel requested that the court be especially careful in assuring that defendant understood the rights he was giving up. When the judge asked defendant what a trial was, defendant responded, presumably referring to one of the police officers who had questioned him on the night of the assault, "He'll come back. At the trial he'll come back here. . . . Same deal over. And I don't want it." The judge then asked defendant if he understood that a trial would be about whether or not he hit the victim. Defendant replied, "I did hit her. I'm guilty." The judge explained that at trial, the victim would testify and the State would have to prove that defendant hit her. Defendant responded, "I did it. . . . I don't need to prove it."

Following a few more brief exchanges between defendant and the court, the court announced that it would accept the plea. Defense counsel then asked the court if he could question defendant. In response to further questioning from his counsel, defendant explained that the role of the jury is to "talk to me." Asked about the job of the judge, defendant replied, "I might win. . . . Well, she might win and I might lose." Counsel then asked:

Q: Do you know in a trial who decides if you hit [the victim] or didn't hit [the victim]?

A: Yeah.
Q: Who?
A: I hit her.
Q: But in a trial who would decide that?
A: Her.
COUNSEL: This is my concern, Judge.
THE COURT: Well, it's a valid concern.

Nevertheless, the court declined to revisit the competency issue, reasoning that the first judge had held a full hearing on the issue, with the benefit of the psychiatrist's report and testimony. The court accepted defense counsel's request for a conditional plea, which reserved defendant's right to appeal the competency issue. Defense counsel did not raise any issue regarding V.R.Cr.P. 11. This appeal followed.

Because we conclude that the second judge failed to satisfy Rule 11(c) before accepting defendant's plea, we need not decide either whether the first judge erred in finding defendant competent to stand trial or whether the second judge erred in refusing to reconsider the first judge's competency ruling. Even assuming that the second judge was justified in relying on the initial competency determination, the record does not support his acceptance of defendant's plea.

■ A finding that a defendant is competent to stand trial is not all that is necessary before he may be permitted to enter a plea; the trial court must satisfy itself that the waiver of constitutional rights is knowing and voluntary. See *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993). The focus of a competency inquiry is on whether the defendant has the *capacity* to understand the proceedings, while the focus of a plea inquiry, aside from assuring that the decision is not coerced, is on whether the defendant *does* understand the significance and consequences of the decision to enter a plea rather than proceed to trial. *Id.* The required advice contained in Rule 11(c)\* seeks to assure that

---

\*Rule 11(c) of the Vermont Rules of Criminal Procedure provides:

**Advice to Defendant.** The Court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge to which the plea is offered;

(2) the mandatory minimum penalty, if any, and the maximum possible penalty provided by law for the offense to which the plea is offered and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense;

(3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made;

decisions to plead guilty or no contest are knowing and voluntary.

Here, given defense counsel's continuing difficulty in communicating with his client, and the close question over whether defendant was competent to stand trial, it was imperative for the court at the status conference to assure that defendant fully understood the rights he would be waiving by entering his plea. Instead, the court accepted defendant's no-contest plea after only a brief colloquy that hardly touched on the requirements of Rule 11(c).

From this brief colloquy, we may assume that defendant was aware of the nature of the charges, and even that the plea was free of coercion, but we cannot be assured that defendant was aware of the direct consequences of entering the plea, let alone the particular potential penalties involved. Considering that the court was fully aware of defendant's mental limitations, its failure to engage defendant in the required Rule 11 colloquy undermines confidence in the outcome of the proceedings and thus was plain error. See *State v. Johnson*, 158 Vt. 508, 513, 615 A.2d 132, 135 (1992) (while there are no precise criteria, in general plain error exists when examination of record in case raises doubt about outcome of proceedings); *United States v. Quinones*, 97 F.3d 473, 475 (11th Cir. 1996) (failure to satisfy any of Rule 11's core objectives — ensuring that plea is free of coercion and that defendant understands nature of charges against him and direct consequences of guilty plea — violates defendant's substantial rights and thus is plain error). Accordingly, we vacate defendant's plea and the resulting sentence.

Because we find plain error in accepting the plea, we need not address defendant's request that we limit *State v. Thompson*, 162 Vt. 532, 534, 650 A.2d 139, 140 (1994) (absent plain error, claim of error under Rule 11(c) demands factual record and opportunity for trial court to grant relief before it may be reviewed in Supreme Court) to cases in which a defendant has a remedy under the motion-to-withdraw provisions of V.R.Cr.P. 32(d). If the State elects to continue

(4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by so pleading he waives the privilege against self-incrimination, the right to a trial by jury or otherwise, and the right to be confronted with the witnesses against him;

(5) if there is a plea agreement and the court has not accepted it pursuant to subdivision (e)(3) of this rule, that the court is not limited, within the maximum permissible penalty, in the sentence it may impose; and

(6) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement.

its prosecution of defendant, defendant may once again ask the district court to revisit its earlier competency determination.

*Reversed and remanded.*