2014 VT 42

# In re Todd Hemingway

[97 A.3d 896]

No. 12-376

Present: **Reiber, C.J., Dooley, Skoglund, Burgess, and Robinson, JJ.**

Opinion Filed May 2, 2014

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Petitioner-Appellee.

*Deborah A. Celis*, Franklin County Deputy State's Attorney, St. Albans, for Respondent-Appellant.

¶ 1. **Burgess, J.** In this post-conviction relief (PCR) proceeding to vacate convictions based on a change of plea following a plea agreement, the court granted petitioner's motion for summary judgment. The PCR court concluded that the change-of-plea colloquy was fundamentally flawed because the criminal court did

not specifically ask petitioner if his plea was voluntary and free of undisclosed coercion or promises as required by Vermont Rule of Criminal Procedure 11. The State appeals, arguing that the colloquy substantially complied with Rule 11, the record demonstrates the plea was voluntary, and petitioner failed to allege actual prejudice. We agree, and reverse and remand.

¶ 2. The facts are not disputed. In April 2010, the State and petitioner proposed a plea agreement to resolve several charges pending against petitioner including kidnapping, aggravated domestic assault, domestic assault, obstruction of justice and twenty-seven counts of violating conditions of pretrial release (VCR). Under the agreement, petitioner pleaded guilty to one felony charge of aggravated domestic assault and five VCRs, and the State dismissed the other charges. The criminal court conducted a colloquy. The court explained the rights that petitioner was giving up by entering a guilty plea, delineated the sentencing consequences of the plea and established, and petitioner admitted, a factual basis for the pleas. The court did not directly inquire of petitioner as to whether his plea was coerced or induced by promises outside of the plea agreement. The court did, however, tell petitioner that it would find his guilty plea to be knowing and voluntary and asked if there was anything he wanted to say to the court before it did so — to which petitioner said "no." In accordance with the agreement, the court sentenced petitioner to five-to-fifteen years, all suspended with probation except for forty days to serve.

¶ 3. In September 2010, the State filed a violation of probation (VOP) complaint against petitioner. In May 2011, after a hearing, the court found that petitioner violated his probation. The court revoked probation and imposed the underlying sentence to serve.

¶ 4. In the course of the VOP hearing, petitioner's attorney discussed the background of the plea agreement and petitioner's dissatisfaction with the State's performance. Counsel represented that petitioner "specifically negotiated in the plea agreement that he would not abuse or harass" his wife "but he could have contact," and that the prosecution and petitioner were "led to believe" by the Department of Corrections (DOC) "that he would . . . be released after forty days in time for his daughter's birthday." Instead, said counsel, DOC kept petitioner past his expected release date because of another unrelated underlying sentence. Moreover, counsel continued, because of the nature of

petitioner's conviction, DOC would not release defendant before he complied with a domestic-violence program condition that he not contact his wife. These points were raised, not only in defense against the VOP, but in support of petitioner's contemporaneous pro se motion to withdraw his plea in which he confirmed that he "took the plea agreement" presuming that "he would be released before his daughter's first birthday, and also would be able to have contact with his wife and other child."[1]

¶ 5. In September 2011, six months later, petitioner filed for PCR. Petitioner moved for summary judgment, arguing that because the trial court did not expressly ask petitioner whether any threats or promises had been made beyond the written agreement, the plea colloquy was inadequate as a matter of law. See V.R.Cr.P. 11(d) (requiring court to inquire of defendant in open court whether plea "is voluntary and not the result of force or threats or of promises apart from a plea agreement"). Petitioner alleged that this was not a technical violation, but a fundamental flaw requiring reversal without proof of prejudice. Petitioner presented his motion for summary judgment as a pure legal question, which required no evidentiary hearing. He explicitly preserved the other issues raised in his original PCR petition. The State cross-moved for summary judgment, arguing that the court substantially complied with Rule 11, that petitioner's post-plea representations in court confirmed voluntariness, and that petitioner's failure to claim any prejudice was fatal to his claim.

¶ 6. Based on the pleadings, the PCR court ruled that the criminal court's failure to engage petitioner expressly on the topic of voluntariness was fundamental error. The court relied upon the holding of *In re Parks*, 2008 VT 65, 184 Vt. 110, 956 A.2d 545, an appeal from a denial of a PCR challenge to a guilty plea accepted by a trial court that failed to follow any part of Rule 11 whatsoever. On those facts and absent any information called for by Rule 11, the Court in *Parks* vacated the plea, citing a line of direct appeal cases — not PCR cases — "holding Rule 11 violations to be plain error regardless of a showing of actual prejudice," based on the "failure to satisfy any of the core

---

[1] A motion to withdraw a plea may by made "only by a defendant who is not in custody under sentence." V.R.Cr.P. 32(d). Here, the court denied the motion to withdraw the plea because defendant *was* in custody under sentence. The court directed defendant to raise his claims in a PCR petition, and petitioner subsequently filed this action.

objectives of Rule 11" by the respective change-of-plea courts. *Id.* ¶ 14. Borrowing from *Parks*, the PCR court here ruled that failure to inquire explicitly into voluntariness was core Rule 11 error regardless of actual prejudice, and entered judgment in his favor. The State appeals.

¶ 7. ■ Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. V.R.C.P. 56(a). On appeal, this Court applies the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party. *In re Carter*, 2004 VT 21, ¶ 6, 176 Vt. 322, 848 A.2d 281. "Post-conviction relief is a limited remedy, intended to correct fundamental errors in the judicial process." *In re Kirby*, 2012 VT 72, ¶ 9, 192 Vt. 640, 58 A.3d 230 (mem.). In a PCR proceeding, the petitioner has the burden of proving that "fundamental errors rendered his conviction defective." *In re Dunbar*, 162 Vt. 209, 211-12, 647 A.2d 316, 319 (1994) (quotation and citation omitted).

¶ 8. ■ Generally, post-conviction relief is not available for "technical or formal violations of Rule 11." *In re Thompson*, 166 Vt. 471, 475, 697 A.2d 1111, 1113 (1997). Substantial, rather than exact, compliance with Rule 11 is usually sufficient to achieve essential fairness and avoid reversible error. *Parks*, 2008 VT 65, ¶ 12. In post-appeal PCR cases subject to evidentiary hearings, the general rule is also that petitioners complaining of Rule 11 noncompliance must show that the trial court's failure to adhere to Rule 11 was prejudicial in fact. *Id.* ¶ 11; see *State v. Cleary*, 2003 VT 9, ¶ 20, 175 Vt. 142, 824 A.2d 509 (explaining that review of Rule 11 challenge in a PCR "places upon the petitioner the additional burden of demonstrating prejudice"); *United States v. Timmreck*, 441 U.S. 780, 783-85 (1979) (holding that in a collateral attack on conviction defendant has burden of showing court violated Rule 11 and that there was actual prejudice). This is in keeping with the overall purpose of Rule 11. "[W]e will not allow a procedural oversight to frustrate a plea where the court's substantial compliance with the rule affords the defendant fair and just process." *Parks*, 2008 VT 65, ¶ 11 (quotation omitted); see also *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1092 (1999) (mem.) (upholding guilty plea without literal compliance with Rule 11, where trial court relied on waiver forms executed by defendant and defendant's statements that he understood the forms and had no questions regarding his plea).

¶ 9. As a predicate matter, it should be noted that application of the direct appeal "plain error" standard in *Parks*, relied on by the PCR court as well as the dissent in this case, is an exception to the general rule that PCR success depends on proof of actual prejudice resulting from a claimed procedural irregularity.[2] In *Parks*, presented with an appeal from denial of PCR from a procedurally flawed guilty plea based on a record of nothing more than a change-of-plea colloquy utterly devoid of any Rule 11 process, this Court analogized to plain error analysis. 2008 VT 65, ¶ 14. This was because, as with a direct appeal from a record empty of adherence to even one of the Rule 11 constitutional standards, it was impossible to know if the defendant understood the charges against him, or to know "with any confidence that defendant understood the legal consequences of his plea agreement and willingly entered into it," or whether he waived an apparent or arguable violation of the double jeopardy clause. *Id.* ¶¶ 13-19.[3]

---

[2] This is not the only exception. In *In re Stocks*, 2014 VT 27, 196 Vt. 160, 94 A.3d 1143, this Court reiterated that no showing of prejudice is required to collaterally attack guilty pleas failing to meet the Rule 11(f) mandate that the record "affirmatively show facts to satisfy each element of the offense" charged. *Id.* ¶ 20 (quotation omitted). The facts-sufficient-to-prove-the-charge requirement is "absolute" and "*distinct*" from the understanding-the-elements and voluntariness inquiries." *Id.* (emphasis added).

[3] The inventory of the "wholesale failure" of the trial court to engage in the necessary Rule 11 colloquy included that the trial court:

did not personally address defendant at the change-of-plea hearing, except to ask for his plea on the assault-and-robbery charge. See V.R.Cr.P. 11(c). The trial judge in no way ensured that defendant understood the nature of the charges to which he was pleading. See V.R.Cr.P. 11(c)(1). He did not question defendant regarding defendant's understanding of the potential sentence to which he would be subject by pleading nolo. See V.R.Cr.P. 11(c)(2). Nor did the trial judge determine whether defendant understood his right to maintain a plea of not guilty. See V.R.Cr.P. 11(c)(3). Above all, however, the trial judge failed to ensure that defendant knew and understood that by pleading nolo he would waive important constitutional rights that are personal to defendant, including the right to a trial by jury. See V.R.Cr.P. 11(c)(4). . . . Furthermore, the court failed to inquire of defendant whether he was entering the plea voluntarily. See V.R.Cr.P. 11(d). Finally, and most perplexingly, the court entered nolo contendere pleas on both charges despite the fact that defendant did not actually plead to the second charge, larceny from a person, in open court.

¶ 10. We disagree with the PCR court's conclusion that failure to explicitly inquire into the voluntariness of petitioner's plea cannot be distinguished from the wholesale Rule 11 noncompliance in *Parks* under the circumstances of this case. The change-of-plea colloquy in *Parks* failed not only to review voluntariness, but failed to include any of the warnings and confirmations necessary for a valid plea under Rule 11 such that the total noncompliance "undermine[d] confidence in the outcome of the proceedings and thus was plain error." *Id.* ¶ 15 (quotation omitted). *Parks* found prejudice per se upon the "trial court's failure to satisfy *any* of the core objectives of Rule 11." *Id.* ¶ 14 (emphasis added). No such absolute failure occurred here.

¶ 11. ■ The PCR court treated the single omission of not directly asking about voluntariness as tantamount to ignoring the rule altogether since one of the "core objectives" of Rule 11 is to ensure guilty pleas are free of coercion. Insisting on such a literal adherence to the rule, however, especially in the face of other facts supporting a countervailing claim of voluntariness, departs from our case law upholding substantial compliance with Rule 11 and requiring the petitioner to prove prejudice. The PCR court's overbroad application of *Parks* precluded its due consideration of surrounding circumstances which could support the criminal court's finding of a voluntary change of plea even without the formality of a particular script.

¶ 12. ■ To determine the gravity of change-of-plea error, we begin with the requirements of Rule 11. "The underlying purpose of Rule 11 is to ensure that a defendant's plea is both knowing and voluntary." *Parks*, 2008 VT 65, ¶ 8. Because a defendant waives important rights by entering a plea agreement, the trial court is required to engage in a discussion with the defendant to ensure that the defendant fully understands the plea and its consequences. *Id.* Rule 11(c) requires the court to address the defendant personally and determine that he or she understands the nature of the charges; the minimum and maximum sentences; the rights to plead not guilty, remain silent, confront adverse witnesses and have a jury trial; and that those rights are waived by a plea allowing for conviction. V.R.Cr.P. 11(c)(1)-(4). The parties in this case agree that the court adequately addressed all these requirements during the hearing.

---

*Parks*, 2008 VT 65, ¶ 10.

¶ 13. Petitioner bases his claim for relief on Rule 11(d), which provides:

> **Insuring That the Plea Is Voluntary.** . . . . [T]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting attorney and the defendant or his attorney.

That petitioner's guilty pleas resulted from discussions between his attorney and the prosecutor was evident from the written plea agreement presented to the court. It is undisputed that during the colloquy the criminal court did not specifically ask petitioner if his plea was the result of coercion, threats or promises aside from the plea agreement, but the court did not entirely skip the topic. Towards the end of the colloquy, the following exchange occurred:

> THE COURT: All right. So I'll accept your guilty pleas to Counts 6, 7, 8, 9 and 10 in Docket 1441-12-09. To all these charges I'll find that you made a knowing *and voluntary* waiver of your constitutional rights to a trial, and that there's a sufficient factual basis for each of these charges. On the aggravated domestic assault — and *before I do this, did you want to address the Court on anything?*
>
> PETITIONER: No, sir.

(Emphasis added.) Despite the court's invitation to comment, petitioner offered no contradiction to the court's express perception of his plea as voluntary. See *Commonwealth v. Furr*, 907 N.E.2d 664, 673 (Mass. 2009) (noting that defendant had numerous opportunities to tell court at plea hearing that he was under improper pressure and lack of such expression supported finding of voluntariness).

¶ 14. The State concedes that the court did not specifically inquire into voluntariness. The State posits, though, that circumstances surrounding and following the change-of-plea hearing support the voluntariness of the plea as found by the criminal

court. Therefore, the State contends, the shortcomings of the colloquy did not amount to fundamental error that is prejudicial per se.

¶ 15. ■■ ■ In assessing voluntariness of the plea, we consider all the circumstances. See *In re Quinn*, 174 Vt. 562, 565, 816 A.2d 425, 428 (2002) (mem.) (looking at "the totality of the circumstances surrounding petitioner's pleas" to determine voluntariness); see also *Brady v. United States*, 397 U.S. 742, 749 (1970) ("The voluntariness of [the defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it."). Here, the record could support the criminal court's finding that petitioner entered his plea voluntarily. Indicia of voluntariness include petitioner's affirmative responses during the colloquy, his acquiescence to the court's expressed finding of voluntariness, his representation by counsel throughout the proceedings, counsel's confirmation of petitioner's negotiation with the prosecution, and petitioner's own subsequent effort to enforce the plea agreement.

¶ 16. ■ The dissent relies on cases finding prejudice per se for procedural mistakes regardless of actual prejudice, such as *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), but the cases are inapposite. As noted earlier, prejudice is not ordinarily assumed in PCR review but must be proved. Petitioner claims neither actual coercion nor prejudice here, but only noncompliance with the literal terms of one of multiple Rule 11 requirements.[4]

---

[4] As noted by the dissent, the *Boykin* rule, foreclosing assumption of constitutional compliance from a silent record, is good law today. *Post*, ¶ 29. But that rule is not the standard for PCR review. It is instead a standard for direct appeals from convictions limited to the trial record only. Even so, the *Boykin* direct appeal standard for a valid change-of-plea record includes an "affirmative showing" of voluntariness, 395 U.S. at 242, but does not require any "set ritual . . . of the trial court in its determination of whether a guilty plea is made voluntarily and knowingly." *In re Hall*, 143 Vt. 590, 597, 469 A.2d 756, 759 (1983); see *United States v. Ward*, 518 F.3d 75, 83 (1st Cir. 2008) (explaining that a "specific script, a set of magic words, or even certain types of inquiries are not required" by *Boykin*).

By contrast, PCR litigation can, as here, turn on evidence and burdens of proof in addition to the record of the challenged proceeding. Like *Boykin*, other cases relied on by the dissent for per se prejudice regardless of the evidence, except for *Parks*, are reversals of guilty pleas on direct appeals from limited records — not reversals of convictions from PCR collateral attacks based on circumstantial evidence and actual procedural prejudice. See *post*, ¶ 43 (citing several federal cases involving direct appeals from sentencing). As noted earlier, the *Parks* PCR

¶ 17. ■ The record before the PCR court in this case showed imperfect Rule 11 compliance, but no complete failure as in *Parks*. All required inquiries were conducted except for a direct question about voluntariness.[5] The element of voluntariness was not, however, completely ignored as in *Parks*, but was noted by the court. While an affirmative inquiry would have been better than a conclusory declaration of voluntariness, the court's statement did expressly invite a question that petitioner declined to raise. Nor was the record limited, in contrast to the cases cited by the dissent, to the change-of-plea colloquy alone. The PCR record included undisputed evidence that the plea agreement was negotiated by petitioner and his counsel, and that petitioner later sought to withdraw his plea claiming the State failed to meet its side of the bargain. This is not such an empty record from which we can only puzzle over petitioner's volition, or, even borrowing from the incorrect direct appeal standard preferred by the dissent, a record that only "undermines confidence in the outcome of the proceedings and thus [is] plain error." *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998).

¶ 18. ■ Thus, the dissent is incorrect in characterizing the record as containing no information to show the plea was voluntary. *Post*, ¶ 30. Evidence of voluntariness was not totally missing. This is no direct appeal, but a much later collateral challenge to a conviction that accumulated subsequent circumstantial evidence relevant to the question of voluntariness. Rather than consider the change-of-plea colloquy in a vacuum, we examine the totality of the circumstances. As one federal circuit court explained, the totality of the circumstances includes "whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (quotation omitted). In *Cross*, the court concluded that even though the defendant was not directly asked

---

exception to actual prejudice turned on the trial court's "wholesale failure" to follow any of the Rule 11 constitutional protocol — again, not the situation presented here. 2008 VT 65, ¶ 10.

[5] That such a direct inquiry, in any event, is no talisman against coercion is illustrated by *In re Fuller*, 135 Vt. 575, 577, 381 A.2d 1056, 1058 (1977), where a guilty plea was stricken as coerced in an appeal from PCR denial, despite the petitioner's earlier response to the trial court's specific inquiry that he was acting "freely, voluntarily, and without coercion."

whether the plea was motivated by threats, coercion or undisclosed promises, the error was harmless because the full record, including post-plea proceedings, demonstrated that the plea was entered voluntarily. *Id.* at 592; see also *Furr*, 907 N.E.2d at 673 (holding that even though court did not directly inquire whether defendant's plea resulted from threats, coercion or improper inducements, "contemporaneous record" adequately supported judge's conclusion that plea was voluntary).

¶ 19. Here, the circumstances are no less relevant to the criminal court's finding of voluntariness. Petitioner's verbal willingness to proceed with the plea agreement and his evident lack of disagreement with the court's declared finding of voluntariness is further bolstered by petitioner's explicit later interest in withdrawing from the agreement for failure of consideration, and his lawyer's affirmation that the terms were as negotiated. Petitioner's answers and opportunities to speak during the change-of-plea hearing suggest nothing but volition, and the PCR court itself noted that there was no suggestion in the record that petitioner's plea was coerced or induced by a secret promise. Petitioner's subsequent litigation tended to ratify the agreement as his own.

¶ 20. ▉▉▉ That the surrounding circumstances included competent counsel throughout the proceeding further militates against a per se presumption of prejudice in the absence of wholesale Rule 11 noncompliance. See *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (explaining that plea is more likely "the product of a free and rational choice" when defendant is represented by competent counsel). It is settled that it "may be presumed that counsel discussed with defendant those elements of Rule 11 that defendant now pleads were not adequately explained to him at the change of plea hearing." *Hall*, 143 Vt. at 596, 469 A.2d at 759.[6]

¶ 21. In view of the total record, there was no wholesale Rule 11 failure, the State made an affirmative showing of voluntariness, and there are no grounds for post-conviction relief absent a claim

---

[6] The presence of defense counsel may not, as noted by the dissent, *post*, ¶¶ 46-48, guarantee against involuntary pleas, but the dissent's refusal to attribute any significance to the guardian obligations of counsel would render the defense bar to the status of potted plants, if not complicit in coercion, in change-of-plea proceedings. In the event of actual coercion, PCR petitioners may, of course, burst the presumptive bubble of adequate representation with evidence of prejudicial incompetency.

of prejudice. Petitioner's change-of-plea hearing was not at all akin to *Parks*. The shortcoming of the colloquy — that the court did not explicitly inquire as to threats or promises, despite its notice to petitioner that it would find voluntariness unless told otherwise — was not so fundamental as to command reversal without proof of prejudice. Petitioner thus needed to show that but for the error, petitioner would not have pleaded guilty. See *In re Bentley*, 144 Vt. 404, 410, 477 A.2d 980, 983 (1984) (explaining that where petitioner claimed that trial court failed to explain nature of charges and minimum and maximum penalties, petitioner would have to show prejudice by demonstrating that he was unaware of the nature of the charges and penalties and this lack of knowledge caused him to enter plea).

¶ 22. Here, petitioner claims no prejudice. The sole basis upon which the trial court granted petitioner's motion for summary judgment was petitioner's claim that as a matter of law the plea colloquy was inadequate. Petitioner specifically stated that no evidentiary development was necessary to evaluate this claim. The uncontested facts relied upon by petitioner were that he entered guilty pleas and during the colloquy the court did not specifically ask him whether his plea was "the result of force or threats or of promises apart from a plea agreement" as required by Rule 11(d). Because petitioner has claimed no prejudice, we will not assume any, and reverse the trial court's summary judgment decision on this basis.

¶ 23. For this reason, it is premature to make any determination regarding what the dissent concludes were promises made to petitioner to induce his guilty plea — that petitioner would be released in time for his child's birthday and would have contact with his wife and other child. Whether these promises were in fact made or were relied upon by either party at the time the plea agreement was entered are questions of fact.

¶ 24. Here, while the underlying agreement was not disclosed to the trial court, it was, according to petitioner, no secret. Whatever misunderstanding may, or may not, be proved in connection with petitioner's status with DOC, there is no undisputed evidence that petitioner's agreement was coerced or the product of false promises. After-the-fact monkey-wrenching by DOC, if it occurred, does not necessarily render petitioner's decision to plead guilty involuntary or coerced.

¶ 25. Petitioner neither claimed nor proved prejudice; therefore, no substantial right of petitioner's was affected.[7] Thus, we reverse the court's decision granting summary judgment to petitioner on his Rule 11 claim asserting that lack of technical compliance requires reversal without a showing of prejudice. Given that petitioner's PCR petition raised other grounds for relief, the matter is remanded for consideration of those issues.

*Reversed and remanded for further proceedings consistent with this decision.*

¶ 26. **Dooley, J.,** dissenting. This case is fundamentally about two promises that petitioner and his lawyer allege were made to induce petitioner to plead guilty: (1) that he would be released in time to be with his child for her first birthday; and (2) that he would be able to have contact with his wife and his other child. While both were facilitated by the plea agreement, neither of these alleged promises was in the agreement. With respect to the first, the plea agreement limited petitioner's time to serve on the offenses covered by the agreement to forty days, a time that would expire before the child's birthday, but petitioner had been convicted of at least one other offense not covered by the plea agreement, and the release time for this offense was controlled by the Vermont Department of Corrections (DOC). With respect to the second, the probation conditions did not prohibit the contact he wanted, but there was no restriction on the probation department's ability to impose additional restrictions on petitioner under its supervisory power. Thus, the promises, if they existed, are outside the plea agreement. It is undisputed that the promises, if they existed, were not honored.

¶ 27. In his pro se PCR petition, petitioner made essentially two claims: that the trial court violated Vermont Rule of Criminal Procedure 11(d) by not inquiring whether the plea was voluntary "and not the result . . . of promises apart from a plea agreement," and that the State failed to honor the promises it had made. With respect to the latter, petitioner claimed: "[a]n unfulfilled prosecutor's promise, which induces a guilty plea deprives the plea of its voluntary character; thus, a broken promise strikes at the very heart of the petitioner's constitutional rights."

---

[7] The dissent's judgment that "there is clear indication of prejudice," *post,* ¶ 28, without a full hearing or findings on the issue, is premature.

¶ 28. I emphasize these points about the case not to suggest that we should redirect our decision from the plea procedure violation to the allegedly broken promises — the latter will be addressed by the trial court on remand — but instead to respond up front to the majority's claim that we are addressing a technical violation of a procedural rule with no showing of prejudice. In fact, the applicable U.S. Supreme Court decision establishing the constitutional right on which petitioner's claims are made, *Boykin v. Alabama*, 395 U.S. 238 (1969), and Rule 11, which implements *Boykin*, were fashioned to prevent the exact kind of controversy that is present here in a case where the failure is not a technicality and there is clear indication of prejudice. This is the main reason for this dissent.

¶ 29. There are actually three reasons why we should affirm the decision of the superior court, and reject the rationale of the majority, and each is sufficient alone to reach that result. The first is that this is actually a relatively simple case, which the majority has made far more complex than it needs to be. In *Boykin v. Alabama*, the state trial court accepted a plea of guilty to a felony without determining whether the plea was voluntary. The U.S. Supreme Court held that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242. The Court quoted with approval from an earlier case involving waiver of counsel: " 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer.' " *Id.* (quoting *Carnley v. Cochran*, 369 U.S. 506, 516 (1962)). It held that "the same standard must be applied to determining whether a guilty plea is voluntarily made." *Id.* Because the plea involved a waiver of federal constitutional rights, the procedure required for waiver is established by federal law. *Id.* at 243. The *Boykin* rule is good law today. See 5 W. LaFave, et al., Criminal Procedure § 21.4(b), at 799-800 (3d ed. 2007) ("When a defendant tenders a plea of guilty . . . in court at arraignment, one important responsibility of the court is to determine whether the plea is voluntary. Consistent with the Supreme Court's standard as to what constitutes a voluntary plea, this means the court will inquire whether the tendered plea was the result of any threats or promises.").

¶ 30. Although in the underlying criminal case the trial judge found the guilty plea to be voluntary, there is no support for that finding. Using the language of *Boykin*, the record does not "show," and there is no "allegation and evidence which show," that the guilty plea was not induced by promises. 395 U.S. at 242. Thus, just as the acceptance of the guilty plea in *Boykin* denied defendant due process of law, the acceptance of the plea here with no inquiry into whether the plea was voluntary denied petitioner due process of law. We should affirm the trial court on this directly applicable rationale.

¶ 31. Instead of resolving this case on the most direct and obvious rationale, the majority instead plunges into the thicket of Rule 11 and reaches the wrong result, making law in the process that undermines the purpose and substance of Rule 11(d). While my first point is that this analysis is unnecessary, my second point is that it is wrong. A proper understanding of what constitutes "substantial compliance" with Rule 11(d) reaches the superior court's result rather than the majority's.

¶ 32. Rule 11 has three major requirements that serve as prerequisites for acceptance of a plea of guilty and entering a judgment on that plea, and each requirement is stated in a separate section of the rule. The first, embodied in subsection (c), requires the court to provide the defendant with critical information and determine that defendant understands the information to ensure that in pleading guilty, defendant makes a knowing and intelligent waiver of the right to a trial. The second, embodied in subsection (d), requires the court to determine that a guilty plea is "voluntary and not the result of force or threats or of promises apart from a plea agreement" based on "addressing the defendant personally in open court." The third, contained in subsection (f), requires the court to determine that there is a factual basis for the plea. This case involves compliance with the requirement of subsection (d).

¶ 33. Subsections (c) and (d) of Rule 11 were adopted in large part to implement *Boykin*. See Reporter's Notes, V.R.Cr.P. 11 ("Rule 11(c) and (d) carry forward in standardized form procedures developed and approved by the Vermont courts to meet the requirement of Boykin v. Alabama, 395 U.S. 238 (1969), that a plea of guilty not be accepted unless the record shows that such plea was knowingly and voluntarily made."); see also *In re Parks*, 2008 VT 65, ¶ 8, 184 Vt. 110, 956 A.2d 545 ("Compliance with Rule

11 is the procedural manner in which the trial court creates a record demonstrating that defendant's plea and consequent waiver of constitutional rights is both knowing and voluntary. Thus, the Rule 11 colloquy is not just a technical litany intended to alter the smooth flow of operations in the trial court. It is a procedure with constitutional implications for the defendant."). As interpreted by the majority, Rule 11(d) no longer meets the requirements of *Boykin*. Nor, as it is interpreted by the majority, does the rule require that the "record shows that such plea was . . . voluntarily made." Reporter's Notes, V.R.Cr.P. 11.

¶ 34. As the majority acknowledges, the trial court here "did not directly inquire of petitioner as to whether his plea was coerced or induced by promises outside of the plea agreement." *Ante*, ¶ 2. Nor did the court inquire "indirectly." Nor did the court inquire whether the plea was voluntary. At least in its colloquy with petitioner, the court ignored the subject entirely. The court did find that the plea was voluntary. In the absence of any colloquy with petitioner on the subject, that conclusion is wholly unsupported by any information in the record. Further, the court did not determine that the plea was "not the result of force or threats or of promises apart from a plea agreement" as explicitly required by the rule. V.R.Cr.P. 11(d).

¶ 35. Despite these omissions, the majority concludes that the "circumstances" provide reasonable assurance that the substance of (d) was complied with and the plea was voluntary and free of coercion or improper promise — even where none of the participants, court, counsel, or petitioner, addressed the subject. *Ante*, ¶ 15. There are two types of "circumstances" in the majority decision — those before the plea is accepted and those after the plea was entered. As to the first type, the majority dismisses our past decisions as distinguishable from this case because they each showed "wholesale Rule 11 failure." *Ante*, ¶ 21. I disagree that the record in this case is so distinguishable from a "wholesale" failure to follow Rule 11 procedure as to Rule 11(d). As to the latter type of circumstances, which are the subject of my third reason for rejecting the majority's analysis, the record shows exactly why accepting Rule 11 noncompliance is wrong in this case.

¶ 36. The majority derives this lack of "wholesale" failure to follow Rule 11 procedure from the following: (1) petitioner failed to contradict the court's use of the word "voluntary," indeed he acquiesced in the finding of voluntariness, *ante*, ¶ 15; (2) the court

complied with subsections (c) and (f) of Rule 11, *ante,* ¶¶ 12-13; (3) petitioner was represented by counsel, *ante,* ¶ 20; (4) petitioner's counsel later represented to the court that petitioner helped negotiate the plea deal with the prosecution, *ante,* ¶ 15; and (5) petitioner sought to enforce some of the State's obligations to him under the plea agreement, *ante,* ¶ 15. I start with the first three, which are circumstances present when the plea was accepted. The latter two go to my third reason for rejecting the majority's analysis.

¶ 37. The first point, that petitioner failed to raise concerns on his own about the voluntariness of the plea, does not support a conclusion that we should excuse noncompliance with subsection (d). The essence of Rule 11 is to protect defendants relatively unsophisticated in the law by affirmatively informing them of their rights and inquiring into matters whose significance they may not fully understand or feel comfortable raising, particularly threats or inducements to enter the plea. As the court explained in *United States v. Jimenez-Dominguez,* 296 F.3d 863, 868 (9th Cir. 2002), discussing the substantially similar federal rule, "[t]he duty to inquire into discussions with the government is designed to uncover any promises, inducements, or understandings the defendant *thinks* he has with the government which are premised upon formal or informal communications and which may influence his decision to plead guilty." The court went on to note that pleas are often preceded by "wide-ranging discussions with the government," and whether or not the State intended to induce a plea or make a promise is less important than "whether the *defendant* has interpreted the discussions in such a fashion," potentially mistakenly. *Id.* This compulsory inquiry by the trial court under Rule 11(d) thus "enable[s] the court to determine whether the plea is knowing and voluntary after identifying and discussing all communications between the parties which may have a bearing on the defendant's decision to enter the guilty plea." *Id.*; see also *United States v. Gonzalez,* 820 F.2d 575, 579 (2d Cir. 1987) (observing that Rule 11(d) serves to "make certain that the plea is indeed voluntary," "to disabuse the defendant of any misconception he may have," and "to preserve the integrity of the plea by eliminating the basis for a later claim" of defect).

¶ 38. Federal courts, interpreting Federal Rule 11 on which Vermont Rule 11 is based, have overturned guilty pleas in which the trial court gave a similarly cursory examination as to the

voluntariness of the plea and/or the possibility of "force or threats or . . . promises." For example, at the plea colloquy in *United States v. Cammisano*, 599 F.2d 851 (8th Cir. 1979), defense counsel stated, "I believe that it is [defendant's] decision to enter this plea." *Id.* at 853 n.2. As related by the Eighth Circuit: "The [trial] court then addressed defendant and asked whether defendant concurred with what his attorney said. Defendant responded: 'Yes, sir, I confirm it.' " *Id.* The Eighth Circuit found that "this procedure falls short of the spirit and letter of Rule 11(d)." *Id.* at 855.

¶ 39. This Court stressed the requirement of an in-court judicial inquiry in *State v. Yates*, 169 Vt. 20, 25, 726 A.2d 483, 487 (1999): "The fact that the court's advice to defendant, the inquiry into voluntariness of the plea, and the inquiry into accuracy are all required to appear in the transcript of the plea proceeding inevitably leads to the conclusion that all three requirements must be met through personal address of the defendant." Although *Yates* is generally about subsection (f), it also addresses subsections (c) and (d). With respect to subsection (c), the colloquy failed to address one of the charges against the defendant, and we held there was not substantial compliance when "a colloquy on a charge was entirely omitted." *Id.* at 26 n.2, 726 A.2d at 487 n.2. *Yates* relied upon *McCarthy v. United States*, 394 U.S. 459, 467 (1969), for the requirement "that a trial judge must personally address the defendant to determine compliance with Rule 11." *Id.* at 26, 726 A.2d at 487. *McCarthy* notes that Rule 11 "is designed to assist the [trial court] in making the constitutionally required *determination* that a defendant's guilty plea is truly voluntary." *McCarthy*, 394 U.S. at 465 (emphasis added) (explaining that, although the more meticulous the inquiry the better, this is merely a means to an end, the ultimate objective being a record sufficient to make the "constitutionally required" judicial determination that the plea was entered into voluntarily and free from improper coercion, threats, or inducements).

¶ 40. The majority's holding that there was substantial compliance because petitioner failed himself to claim at the guilty plea proceeding that his plea was not voluntary, or failed to raise any issues with the court, directly wars with the requirement of Rule 11(d). If a criminal defendant is required to raise, on his own initiative, reasons why the plea should not be accepted, the responsibility of the court is eliminated. Defendants who are

ignorant of their rights, exactly the persons whom the rule is intended to protect, waive those rights without knowing they have them. It is not a "technical" requirement that Rule 11 imposes the responsibility of inquiry to ensure voluntariness on the court; it is the heart of Rule 11's purpose to ensure constitutional compliance.

¶ 41. I find the majority's position particularly weak in a case where the controversy is about promises allegedly made by the prosecution. To a criminal defendant who believes he has the advantage of promises from the prosecution that will make the sentence imposed acceptable, the plea of guilty is "voluntary." He has no reason to address the court with respect to voluntariness, and certainly no reason to contradict a finding of voluntariness. The important point about the colloquy required by Rule 11(d) is that the judge must determine whether the plea is the result of "promises apart from a plea agreement." This is stated as an addition to "determining that the plea is voluntary." The judge in this case made no finding that there was no promise apart from the plea agreement.

¶ 42. The second reason the majority gives, that the trial court complied with sections (c) and (f) of Rule 11, brings us to *Parks*, the decision on which the PCR court placed the greatest reliance. The majority distinguishes *Parks* because that decision involved a guilty plea acceptance that "failed to follow any part of Rule 11 whatsoever" to support a finding of plain error warranting reversal, rather than a failure to substantially comply solely with Rule 11(d). *Ante*, ¶ 6. While the majority accurately describes the facts of *Parks*, it distorts the holding. The exact holding is in the final paragraph:

> To hold that defendant's pleas here were knowing and voluntary would in effect overrule the provisions of Rule 11 — which were intended to promote the finality of guilty pleas and prevent collateral attack by requiring that trial judges enter a plea only after personally ensuring, on the record, that the defendant understands the consequences *and* willingly chooses to enter the plea.

2008 VT 65, ¶ 22 (emphasis supplied). Additionally, *Parks* itemized the specific deficiency present here. See *id.* ¶ 10 ("Furthermore, the court failed to inquire of defendant whether he was entering the plea voluntarily.").

¶ 43. Ensuring that a plea is voluntary and free from coercion or promises has been described by this and other courts as one

of the "core" concerns of Rule 11, along with ensuring that the defendant understands the nature of the charges and the consequences of the plea. *Parks*, 2008 VT 65, ¶ 14. Therefore, "[w]hen a [trial] court completely fails to address one of these concerns, the defendant's substantial rights have been affected and Rule 11 requires automatic reversal." *United States v. Adams*, 961 F.2d 505, 510 (5th Cir. 1992); accord *United States v. Pena*, 314 F.3d 1152, 1158 (9th Cir. 2003) (holding that trial court's "failure to satisfy a core concern of Rule 11" by adequately informing defendant of charges against him violated defendant's substantial rights and therefore required reversal); *United States v. DePace*, 120 F.3d 233, 236 (11th Cir. 1997) ("A court's failure to address any one of these three core concerns requires automatic reversal." (quotation omitted)); *State v. Thompson*, 167 Vt. 383, 387, 708 A.2d 192, 194 (1998) (holding that failure to comply with requirements of Rule 11(c) to ensure that defendant fully understood nature of charges and consequences of plea "undermines confidence in the outcome of the proceedings and thus was plain error" requiring that plea be vacated); see also *In re Quinn*, 174 Vt. 562, 563, 816 A.2d 425, 426 (2002) (mem.) (noting that a "finding of fundamental error in the acceptance of a guilty plea is sufficient to award the relief requested"). Consistent with the core requirement concept, we have found Rule 11 violations, and reversed judgments based on guilty pleas, where we found a violation of subsection (c) alone, *Thompson*, 167 Vt. at 387, 708 A.2d at 194, and subsection (f) alone, *Yates*, 169 Vt. at 27, 726 A.2d at 488. In light of the constitutional basis for subsection (d), it would make no sense to hold that a violation of subsection (d) is inconsequential as long as the court complied with subsections (c) and (f). Indeed, we said about Rule 11(f) in *In re Dunham*, 144 Vt. 444, 451, 479 A.2d 144, 148 (1984): "Absent [compliance with Rule 11(f)], no matter how perfectly the other parts of Rule 11 have been observed, we cannot find a voluntary plea." We emphasized that no showing of prejudice was necessary to give relief in a PCR proceeding for a Rule 11(f) violation. *Id.*; see also *In re Miller*, 2009 VT 36, ¶ 11, 185 Vt. 550, 975 A.2d 1226 (showing of prejudice not required because Rule 11(f)'s requirement "goes directly to the voluntariness of his plea."). We recently pointed out that the purpose of Rule 11(f) is to "reinforce[ ] the goal of ensuring knowing and voluntary pleas." *In re Stocks*, 2014 VT 27, ¶ 13, 196 Vt. 160, 94 A.3d 1143; see also *State v. Whitney*, 156 Vt. 301, 303,

591 A.2d 388, 389 (1991) (stating that Rule 11(f) addresses "constitutionally required determination of voluntariness"). There is no basis to distinguish one requirement of Rule 11, that in subdivision (f), which is intended to reach the goal of voluntary pleas, from another requirement in subdivision (d) intended to reach the same goal.

¶ 44. In essence, the majority is saying that it is acceptable to violate the constitutional requirement of *Boykin* because the court did not violate another right of the petitioner. As the PCR court held, "*Parks* is clearly apposite, and not substantially distinguishable on the critical issue of the court's obligation to engage the defendant directly." To the extent we ground our decision on Rule 11(d), the PCR court's conclusion is clearly correct.

¶ 45. There is another point about *Parks* that is evident from the majority's discussion of the case. While the majority purports to distinguish it, the majority also attacks it because it relies upon some direct appeal precedents even though it is a PCR case. In fact, *Parks* demonstrates that direct appeal and PCR decisions are largely interchangeable once we ruled that overturning a plea of guilty based on a Rule 11 violation requires a showing of plain error. See *State v. Thompson*, 162 Vt. 532, 534, 650 A.2d 139, 140 (1994). Indeed, whether we are dealing with a plain error direct appeal or a PCR, the standard has been whether there was substantial compliance with Rule 11. See *In re Stocks*, 2014 VT 27, ¶ 10 (PCR); *State v. Mutwale*, 2013 VT 61, ¶ 8, 194 Vt. 258, 79 A.3d 850 (direct appeal). This is the first case to hold that there can be substantial compliance despite noncompliance with a core requirement of Rule 11. While the majority discusses *Parks*, distinguishing it based on the violation of all core requirements in that case, it ignores *Thompson*, 167 Vt. at 387, 708 A.2d at 194, and the line of cases ending in *In re Stocks*, 2014 VT 27, ¶ 21, where violation of only one core requirement was sufficient to overturn a guilty plea.

¶ 46. The majority's third reason, the involvement of an attorney for a criminal defendant, is similarly an evasion of the requirements of the rule. Except for cases involving relatively minor charges, counsel, whether appointed or retained, is present in virtually every criminal case. Thus, if a guilty plea resulted from improper coercion or unenforceable promises or inducements, defense counsel was generally "involved" in the coercion or inducement to the extent that counsel was involved in the plea at

all.[8] Indeed, our cases where coercion was found to be present involved coercion by defendant's counsel. See *Quinn*, 174 Vt. at 564-65, 816 A.2d at 427-29; *In re Fuller*, 135 Vt. 575, 580-81, 381 A.2d 1056, 1060 (1977). It is also significant that the defendant in *Boykin* was represented by counsel, as were the defendants in *Yates* and *Parks*, our two main decisions granting relief because of violations of Rule 11.

¶ 47. The majority's reliance on this factor is apparently based on the conclusion that the lawyer can always be relied upon to protect the interest of the client even though the actions of the lawyer are usually invisible to us or the trial court. Some academic examinations of this conclusion conclude that it is sometimes erroneous. See D. Lynch, *The Impropriety of Plea Agreements: A Tale of Two Counties*, 19 Law & Soc. Inquiry 115 (1994);[9] A. Alschuler, *The Defense Attorney's Role in Plea Bargaining*, 84 Yale L.J. 1179, 1247 (1975) ("The client, however, may correctly perceive that he is, in effect, the public defender's prisoner, that he will not receive within any foreseeable period the trial that the Constitution guarantees him, and that the only way to secure any resolution of his case is to do the public defender's bidding"). It is one thing to rely on the presence of a lawyer to

---

[8] This is not to say that defense counsel are always at fault in cases where defendants have been threatened or coerced into pleading guilty, only that defense counsel are not the safeguard the majority takes them to be. Cases from around the country show that improper threats, coercion, and promises can come from a wide variety of sources. E.g., *United States v. Martinez-Molina*, 64 F.3d 719, 734 (1st Cir. 1995) (holding that Rule 11(d) was not satisfied where judge inquired whether pleas were induced by threats or improper promises from anyone at the U.S. Attorney's office but did not inquire whether pleas were coerced by codefendants); *United States v. Cammisano*, 599 F.2d at 856-57 (finding that evidence of "familial coercion" is one factor in determination that defendant should be allowed to withdraw his plea); *United States v. Werker*, 535 F.2d 198, 203 (2d Cir. 1976) (stating that judicial involvement in plea-bargaining is contrary to voluntariness provision of Rule 11 because the judge "seems to become an advocate for the resolution [the judge] has suggested to the defendant"); *United States v. Martinez*, 486 F.2d 15, 18, 21 (5th Cir. 1973) (acknowledging that waiver of *Miranda* rights induced by improper promise of U.S. customs agent that "nothing would happen" to defendant could have invalidated plea deal, although ruling that in this case it did not); see also D. Lynch, *The Impropriety of Plea Agreements: A Tale of Two Counties*, 19 Law & Soc. Inquiry 115 (1994).

[9] This study by a lawyer who was formerly a public defender and also a prosecutor describes the ways in which plea bargaining is conducted to the advantage of prosecutors and defense counsel and to the disadvantage of the defendant. Lynch, *supra*, at 123-24.

explain the nature of the charge(s) against a defendant and defendant's rights with respect to those charges, the subject of subsection (c) of Rule 11. As the U.S. Supreme Court noted, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson v. Morgan*, 426 U.S. 637, 647 (1976); cf. *McCarthy*, 394 U.S. at 470-72 (stating that a judge may not satisfy the requirements of Rule 11 by relying solely on defense counsel's representations that defendant understands the charges against him). It is quite another to rely upon counsel to protect a defendant against improper coercion or unenforceable inducements where the lawyer is perceived as creating or passing on the coercion or inducements.

¶ 48. Relying upon the presence of counsel in this case is particularly ironic because, as discussed in more detail under the third reason to affirm, the lawyer agreed that there was a separate agreement with the prosecution, at least as to release by the time of petitioner's daughter's first birthday. See *ante*, ¶ 24. Any presumption that a defendant's rights will always be protected because the defendant will receive competent advice of counsel is undermined by this case. This point is a good bridge to the third reason why we should affirm the superior court in this case.

¶ 49. The last parts of the rationale of the majority are that defense counsel later told the court that petitioner negotiated the plea himself and that petitioner later sought to enforce the plea agreement against the State. They are used by the majority as reasons why this is a case where "[p]etitioner claims neither actual coercion nor prejudice . . . but only noncompliance with the literal terms of one of multiple Rule 11 requirements." *Ante*, ¶ 16. The majority's argument here is a misdirection, and its characterization of petitioner's claim is wholly divorced from the actual circumstances of this case. The facts on which it purports to rely are, in fact, the most important reasons why the superior court decision was right.

¶ 50. Some of the relevant facts are set out in the opening paragraphs of this dissent, but I will add more detail to demonstrate clearly what occurred. On February 23, 2011, some ten months after the pleas of guilty, petitioner filed a motion to withdraw his pleas in the criminal division. In addition to alleging

the violation of Rule 11, he alleged that under the plea agreement negotiated between his lawyer and the state's attorney, "he would be released before his daughter's first birthday and also would be able to have contact with his wife and other child." He moved to withdraw his pleas. The motion doesn't state directly that he didn't receive the benefits he understood he would get, but that is the import of the motion. Apparently, he obtained no relief because the motion was untimely. See V.R.Cr.P. 32(d) (motion to withdraw a plea of guilty must be made within thirty days of entry of judgment unless defendant's sentence does not include a term of imprisonment).

¶ 51. There was, in effect, a hearing on the motion, in which petitioner's counsel stated his understanding of what occurred.[10] He stated:

> And in this case, there was a specific promise that he would be released forty days after the date of sentencing so he could be out in time for his daughter's birthday, and that was specifically negotiated with the State's Attorney. The State's Attorney and I had exchanges after the plea agreement about that, and the fact that it appeared it wasn't being honored, and she and I had both talked to the Department of Corrections and had both been led to believe that he would, in fact, be released after forty days in time for his daughter's birthday; and instead, the Department of Corrections wouldn't honor that, and he ended up staying in jail until June instead of being released in May.
>
> The Department of Corrections also didn't honor the plea agreement, which called for DAP, and insisted that in order to get out he had to agree to do the IDAP program. We had specifically negotiated in the plea agreement that he would not abuse or harass Amanda Hemingway, but he could have contact, and by forcing him into the IDAP program, they imposed a condition of no contact, which violated the plea agreement.
>
> . . . .

---

[10] The hearing was held on March 3, 2011 in connection with a violation of probation hearing initiated by the State.

State's Attorney contacted the Director of — the Superintendent, and I contacted the Superintendent of DOC, and we were both told that there was no problem with — there's no problem with the structure of our plea agreement in terms of getting Mr. Hemingway released under the conditions that we had outlined. Then they turned around and changed the ball game on us.

So I think that, you know, . . . not only from a lay person's point of view, but also from a legal professional's point of view, it's not a good way to conduct business, and certainly it's incomprehensible to somebody in Mr. Hemingway's position how a promise can be made by the State and then violated.

. . . .

THE COURT: Okay . . . you both agreed . . . that in spirit, the agreement was at fault. . . . In spirit, not literally. Specifically, the agreement was at fault, but in spirit the agreement was at fault, the spirit of the agreement was he's going to be released in forty days.

¶ 52. On being unable to obtain relief by his motion, petitioner filed this PCR case, claiming that the court violated Rule 11; that he was promised he would be released in forty days, which didn't happen; and that he was promised he would have contact with his wife and children during his sentence, which was forbidden. Petitioner filed a partial motion for summary judgment, specifically on the count alleging a violation of the plea acceptance procedures. Because the trial court granted petitioner's motion, the other counts alleging the State's promises and their violations have not yet been reached.

¶ 53. The majority claims that none of this involves prejudice from the violation of Rule 11(d) because it deals with a claim of violation of the plea agreement and not a separate promise. I recognize that petitioner has often described his claims as breach of the plea agreement, but the promises here are clearly not part of the plea agreement as contemplated in the rule. In this case, the plea was a written document, which states that it is "a binding Rule 11 agreement." Under Rule 11(e)(2), a plea agreement must be disclosed in open court at the time the plea is entered. Neither of the promises in issue was in the written plea agreement or disclosed in open court.

¶ 54. If the promises alleged here are part of the "plea agreement" as that term is used in Rule 11(d), then all promises made as part of the plea negotiation process are part of the plea agreement whether written or oral and whether disclosed or not. In that circumstance there are never "promises apart from a plea agreement," and the determination requirement is a nullity. Since the whole point of the rule is to surface agreements or perceived agreements that are not otherwise before the court, see *Jimenez-Dominguez*, 296 F.3d at 868, the language must be aimed at exactly these kinds of agreements.

¶ 55. If that were not enough, even if the alleged promises were incorporated into the plea agreement, as the majority implies, the fact that petitioner attempted to enforce the State's promises to him in a pro se motion simultaneously with his Rule 11 claim should not be taken as evidence that defendant's objection to the Rule 11 process is invalid. An argument that an agreement is void or, in the alternative, should be enforced in a certain manner is common and unobjectionable. E.g., *Segal v. Segal*, 823 A.2d 1208, 1210 (Conn. 2003) (discussing just such an argument). Even if I agreed that the promises were part of the plea agreement, I would not agree with the majority's reliance on this factor as a reason why this is a case with no claim of prejudice. The fact that petitioner understands the plea to mean certain things, and allegedly negotiated for those things himself, is not a logical guarantee that the agreement was not subject to improper pressures or promises.

¶ 56. This brings me back to Rule 11. The purpose of the colloquies in Rule 11 is to find and resolve areas of controversy that may upset guilty pleas and not leave them to later fact determinations based on who-said-what-to-whom in hours of bargaining. Petitioner may or may not have an enforceable agreement with the State that was breached, but it is clear that he understandably believed that he had such an agreement. If the court had asked the question Rule 11(d) requires, and petitioner had answered it consistently with his claims in this proceeding, the court would have been able to evaluate the validity and enforceability of the promises petitioner thought he had. As a result, petitioner would have known whether he had enforceable promises when he pled guilty, or not, and if the court found the promises to be enforceable, it is less likely the promises would have been breached. If he did not disclose the alleged promises when asked directly, his inaction would have been evidence that there were no such prom-

ises. In these circumstances, it is far preferable for us to enforce Rule 11(d) as written than it is to ignore it and to try to adjudicate what undisclosed oral agreement existed between a criminal defendant and the State and whether the agreement was breached. This is the third reason why we should affirm the superior court.

¶ 57. The majority either does not agree with the above purpose of Rule 11 or sees no need to implement it. The majority's prejudice ruling turns Rule 11(d) into a paper right, with no possibility of a remedy. That is because the showing of prejudice it requires will by itself invalidate a plea of guilty, irrespective of whether there is also a violation of Rule 11(d). In this case, petitioner is required to prove the promises and their breach in order to establish a violation of Rule 11(d). But the prosecutor's dishonored promise will give petitioner the right to set aside his guilty plea, even if there were perfect Rule 11 compliance. See *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The same would be true if petitioner showed the presence of threats or coercion. The majority's position not only means there will never be a remedy for a violation of Rule 11(d), but also that there will never be a remedy for a violation of *Boykin*, essentially eviscerating a constitutional right.

¶ 58. In conclusion, I return to two points. We adopted Rule 11(d) to implement *Boykin*. It clearly does not do that. We have always required substantial compliance with Rule 11. This decision has not honored that requirement.

¶ 59. I dissent. I am authorized to state that Justice Robinson joins this dissent.