### State of Vermont v. William Currier

[758 A.2d 818]

No. 94-097

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 25, 2000

*James A. Hughes*, Franklin County State's Attorney, and *Derk A. Wadas* and *Heidi M.L. Brissette*, Deputy State's Attorneys, St. Albans, for Plaintiff-Appellee.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Amestoy, C.J.** Defendant William Currier, sentenced to a term of twenty-years-to-life imprisonment as a result of a plea agreement, seeks to have his sentence vacated with leave to withdraw his plea to the charged offenses. Defendant contends that the trial court erred by failing to provide him with an opportunity to withdraw his plea after it rejected his original plea agreement. We affirm.

I

On August 19, 1993, defendant William Currier, incarcerated at the Northwest Regional Correctional Facility in Chittenden County on a five-to-ten-year aggravated-assault conviction, escaped from prison. The following day, he set fire to his ex-wife's home in Franklin County. Defendant was arrested at the scene of the fire and again incarcerated.

On September 8, 1993, defendant was arraigned in Chittenden District Court on a charge of escape. On November 8, 1993, defendant was arraigned in Franklin District Court on three felony charges stemming from the arson: unlawful mischief, unlawful trespass, and arson. The Chittenden County escape charge was consolidated with the three Franklin County charges. As defendant had ten prior felony convictions, he was eventually charged as a habitual offender pursuant to 13 V.S.A. § 11.

At a December 22, 1993, change-of-plea hearing in Franklin District Court, defendant negotiated a plea agreement with the State, which provided that he would plead nolo contendere to all four pending charges against him, in exchange for a recommended sentence of fifteen-years-to-life imprisonment. The court stated that it would order a presentence investigation (PSI) report from the Department of Corrections before accepting the sentence, and noted defendant's right to withdraw his plea in the event that the court decided on a more severe sentence.*

The court then went through each of the four charges with defendant, and defendant answered affirmatively that he understood the nature of, and maximum possible penalty for, each charge. The court engaged defendant in a thorough V.R.Cr.P. 11 colloquy regarding the rights he was giving up by pleading nolo contendere.

---

*Vermont Rule of Criminal Procedure 11(e)(2) provides:

If a plea agreement has been reached by the parties which contemplates entry of a plea of guilty or nolo contendere in the expectation that a specific sentence will be imposed or that other charges before the court will be dismissed, the court shall require the disclosure of the agreement in open court at the time the plea is offered. In a felony case, the prosecuting attorney shall also disclose the reasons for entry into the plea agreement. Thereupon the court, before entry of the plea, may accept or reject the agreement, or defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. The plea agreement shall not be binding upon the court nor shall it limit the court in the judgment and sentence to be imposed unless the court accepts the plea agreement under subdivision (e)(3) of this rule.

Defendant answered in the affirmative to each question, acknowledging that he was entering his pleas freely and voluntarily. The court asked for defendant's plea on each charge, and defendant responded no contest. The court accepted each of defendant's pleas, finding that he entered them "after a knowing waiver of his constitutional rights." Sentencing was set for January 31, 1994.

On December 31, 1993, defendant unsuccessfully attempted to escape from the Northwest State Correctional Facility. Consequently, the State brought an additional attempted-escape charge at the January 31, 1994 sentencing hearing on the four previous charges. At this hearing, defense counsel informed the court that defendant and the State had agreed to consolidate the new attempted-escape charge with the prior escape charge, and roll both charges into a five-to-ten-year sentence to be served concurrently with the fifteen-years-to-life imprisonment sentence stemming from the August 20, 1993 arson.

The court rejected the plea agreement, basing its decision on threats defendant made against his ex-wife as indicated in the PSI report. Defendant was present to hear the court's decision. The court stated that its main concern was that the fifteen-year minimum sentence was too short because defendant would become eligible for parole in eleven-to-twelve years. Although the State and defense counsel alternately argued that the plea agreement was sufficient, the court reiterated its objection to the agreement.

After a recess, defendant returned with a modified plea agreement, which provided for a sentence of fifteen-years-to-life on the three charges stemming from the arson consecutive to a concurrent five-to-ten-year sentence on each escape-related charge. The court asked defendant if this modification was satisfactory to him, and defendant responded that it was.

The court turned specifically to the new attempted-escape charge, securing defendant's understanding of the nature of the charge and maximum possible penalty, and went through a complete V.R.Cr.P. 11 colloquy with defendant. Referring to the earlier plea agreement and colloquy, as well as the modification the parties had agreed to during the recess, the court asked defendant if he was entering his plea voluntarily. Defendant answered affirmatively. The court asked defendant for his plea on the new attempted-escape charge, and defendant pled nolo contendere.

The court then accepted defendant's modified plea agreement and sentenced defendant according to its terms. Defendant signed a notice of plea agreement dated January 31, 1994, as well as a waiver

of rights form that stated: "No threats or force have been used against me by anyone to try to make me plead guilty or no contest. I plead guilty or no contest of my own choice, freely and voluntarily."

## II.

This appeal has traveled a lengthy route to reach us. Shortly after defendant was sentenced to twenty-years-to-life imprisonment, he sent a letter to the Franklin Family Court, which forwarded it to Franklin District Court, that stated: "I do not wish to appeal my criminal case, which resulted in life imprisonment. Thank you anyways." *State v. Currier*, 162 Vt. 626, 627, 649 A.2d 246, 246 (1994). Vermont Rule of Appellate Procedure 3(b) provides that in any criminal case resulting in life imprisonment, appeal to the Supreme Court shall be automatic unless the defendant with the advice of counsel has waived such appeal in writing.

The court scheduled a hearing on the issue. At the hearing, the court asked defendant whether he still wanted to give up his right to have the case reviewed by the Supreme Court. Defendant responded, "I don't have any comment." The only matter conclusively established at the hearing was that defendant signed the letter waiving his appeal after receiving the advice of counsel. Following the waiver hearing, the State filed a motion to dismiss defendant's automatic appeal. Because the trial court's inquiry did not establish that defendant's waiver was made knowingly and intelligently, we denied the State's motion and remanded the matter to the trial court for such a determination. See *id.* at 627, 649 A.2d at 247.

Defendant was represented in the trial court by the public defender for Franklin and Grand Isle counties. After our decision, the public defender advised the Court in writing that defendant did, in fact, wish to pursue an appeal. This, presumably, caused the district court to regard our previous mandate as moot; no further proceedings appear to have taken place in that forum. The public defender filed a docketing statement here, but advised the Court several times in writing that he did not consider himself to be defendant's appellate counsel because he had not been separately appointed pursuant to 13 V.S.A. § 5236(a) (requiring defendants to submit separate application on appeal to receive representation at public expense). On January 29, 1999, noting the unusual circumstances of this case, we ordered the defender general to conduct an appropriate inquiry and inform the Court in writing whether defendant wished to pursue an appeal of his sentence. See Administrative Order 4, § 4 (public defender's

representation of defendant continues until court or defender general relieves public defender of appointment or separate application for appointment of appellate counsel denied). Defendant chose to continue with his appeal, represented by the defender general, and we now address his argument.

## III.

Defendant asserts on appeal that the trial court's failure to comply with what he describes as V.R.Cr.P. 11(e)(4)'s "explicit requirement of personal address" is equivalent to the error we found fatal in *State v. Bergerson*, 144 Vt. 200, 475 A.2d 1071 (1984). There, the defendant agreed to a plea in which the State promised to recommend to the court that no jail time be imposed in exchange for defendant's completed restitution and guilty plea. The court accepted the plea agreement, but reserved a decision on sentencing until it had read the PSI report. At the sentencing hearing, the court rejected the plea agreement and imposed a sentence that included jail time. Defendant did not attempt to withdraw his plea, but did move to strike the sentence. The court denied his motion. We held the court "did not act in accordance with Rule 11 when it subsequently failed to afford defendant an opportunity to withdraw his plea." *Id.* at 203, 475 A.2d at 1073. We stated that the court's actions constituted plain error because "[a]t no time . . . during the . . . sentencing hearings, was defendant informed of the right to withdraw his plea." *Id.*

*Bergerson* was consistent with our previous observation that V.R.Cr.P. 11(e)(4) was amended to make clear that a judge's unwillingness to impose the sentence agreed upon as the result of a plea agreement between the State and a defendant is always a "fair and just reason" for withdrawal of a plea within the meaning of V.R.Cr.P. 32(d). See *State v. Belanus*, 144 Vt. 166, 169-70, 475 A.2d 227, 229 (1984). While withdrawal of a guilty or nolo contendere plea is within the discretion of a sentencing court, we have consistently held that it is an abuse of discretion to refuse to grant a defendant's motion to withdraw his plea where a sentencing judge decides not to follow the sentence recommended by the plea agreement. See *id.* at 170, 475 A.2d at 229; see also *State v. Wallace*, 148 Vt. 631, 631, 532 A.2d 971, 972 (1987) (mem.) ("The court below failed to follow the procedure outlined in V.R.Cr.P. 11 by not affording defendant an opportunity to withdraw his plea after the court rejected the plea agreement in favor of a harsher sentence than that contemplated by the agreement."); *In re Berrio*, 145 Vt. 6, 8, 481 A.2d 1057, 1058 (1984) ("When a sentencing

court rejects the recommended sentence in a plea agreement, before imposing a greater sentence, it must, consistent with basic notions of judicial fairness, afford the defendant an opportunity to withdraw his guilty or nolo plea.").

Although defendant attempts to portray this case as squarely within the ambit of *Belanus*, *Bergerson*, and their progeny, we are not confronted here, as in the cases cited above, with a court's refusal to allow a defendant to withdraw a plea after a rejection of a plea agreement. Nor is this a case in which the sentence imposed was either an "evident surprise," *Bergerson*, 144 Vt. at 202, 475 A.2d at 1073, or an "unexpected result." *State v. Turgeon*, 161 Vt. 561, 561, 641 A.2d 88, 89 (1993). Instead, defendant finds himself in the awkward position of invoking V.R.Cr.P. 11(e)(4) when the court *accepted* the plea agreement and imposed the exact sentence agreed to by the State and defendant.

■ V.R.Cr.P. 11(e)(4) identifies the procedures required when a court *rejects* a plea agreement.

> If the court rejects the plea agreement or defers decision upon it, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is or may not be bound by the plea agreement, pursuant to Rule 32(d) afford a defendant who has already pleaded the opportunity to then withdraw his plea, and advise the defendant that if he persists in his plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Thus, to properly reject a plea agreement, a court must go through a four-step process: first, it must inform the parties of its rejection; second, it must personally advise the defendant in open court that it is or may not be bound to the agreement; third, it must afford the defendant an opportunity to withdraw the plea consistent with Rule 32(d); fourth, it must advise the defendant of the discretionary consequences of persisting in the plea agreement.

Defendant argues that the court failed to comply with the third part of Rule 11(e)(4)'s process because it did not personally advise him of his right to withdraw his rejected plea or afford him the opportunity to do so. The State counters that the court engaged in a colloquy with defendant sufficient to meet Rule 11(e)(4)'s requirements.

It is important to note — notwithstanding defendant's interest in merging them into one — that there are two plea agreements in this case. The first was rejected by the court. The second was accepted. In essence, defendant argues that the court's acceptance of the second agreement rendered the pleas upon which the court relied "involuntary." Significantly, defendant does not assert that the court failed to comply with either V.R.Cr.P. 11(c) ("Advice to Defendant"), or V.R.Cr.P. 11(d) ("Insuring That the Plea Is Voluntary"), in accepting defendant's pleas on December 22, 1993, and January 31, 1994.

Nonetheless, defendant asserts that his pleas cannot be determined to be truly voluntary. According to defendant, the court committed error when, after informing defendant that it rejected the original plea agreement, and informing defendant that he had a right to withdraw his pleas, it accepted a new plea agreement negotiated by the State and defendant without repeating the colloquy on the four original charges. The court engaged defendant in the following exchange:

> The Court: We're once again here on the case of William Currier. There is a new notice of plea agreement which is essentially the same as the first, except that the counts for the new escape charge indicates that the recommended sentence would be fifteen-years-to-life, and then there will be an additional sentence of five-to-ten years on each of the escape charges . . . which will be consecutive to the fifteen-years-to-life. This . . . will be subject to the recommendation that defendant be incarcerated outside the state of Vermont.
>
> Okay, is this modification satisfactory to you, Mr. Currier?
>
> [Defendant]: Yes, sir.

Defendant's argument exalts ritual over reality. See *State v. Morrissette*, 170 Vt. 569, 571, 743 A.2d 1091, 1093 (1999). First and foremost, with defendant present, the court announced its rejection of the original plea agreement because it wanted a higher minimum sentence than fifteen years. As the court prepared to table the matter, it expressly informed defendant — albeit in the third person — of his right to withdraw his plea:

> [W]e'll inquire of this time if Mr. Currier wishes to withdraw his plea, what we'll do is, we'll set this matter for a status conference in about a week and find out at that time whether

Mr. Currier wishes to continue with his plea, or wishes to withdraw his plea.

To put it succinctly, this personal address satisfied V.R.Cr.P. 11(e)(4). Defendant chose not to take advantage of the opportunity to withdraw from his rejected plea. Instead, defendant readily acquiesced to the State's suggestion for a recess to work out a modified agreement with a longer minimum sentence that would satisfy the court.

The court accepted the modified agreement, and defendant answered affirmatively that the new plea agreement was "satisfactory" to him, and that he was entering into it voluntarily. Defendant also signed plea and waiver forms memorializing the modified bargain and his voluntariness in entering it. When defendant presented the modified plea and the court accepted it, V.R.Cr.P. 11(e)(4) no longer applied. The most relevant rule to a determination of voluntariness then becomes V.R.Cr.P. 11(d), and the court scrupulously observed its requirements here.

After engaging defendant regarding the nature and maximum possible penalty for the new attempted-escape charge, the court went through a complete V.R.Cr.P. 11 colloquy with defendant. Referring to the December 22, 1993, plea agreement and colloquy, the court then addressed defendant:

> The Court: Aside from the plea agreement that we went over back in December, and then the modification added today, has anyone made any other promises to you or any threats of any kind to somehow try to get you, or induce you to enter the plea?
>
> Mr. Currier: No.
>
> The Court: Are you entering the plea freely and voluntarily?
>
> Mr. Currier: Yes.

In contrast to circumstances where a defendant had neither notice that the court intended to impose a greater sentence than the defendant had bargained for, nor opportunity to avoid the consequences, the court here acted "consistent with basic notions of judicial fairness." *Berrio*, 145 Vt. at 8, 481 A.2d at 1058. It functionally and practically informed defendant of his right to withdraw the original plea when it rejected the recommended minimum sentence, and it allowed defendant to withdraw his plea when it granted the recess to

facilitate the working of a new deal between defendant and the State. Even if the court did not precisely comply with V.R.Cr.P. 11's procedural requirements on the very narrow issue of withdrawal of a rejected plea — by perhaps a more direct, first person address to defendant — its careful and thorough handling of this case in virtually every other aspect assured that defendant's plea was voluntary and fair. "We refuse to so straitjacket the trial courts. Although a more specific and careful enunciation of the Rule 11 elements is encouraged, the trial court's substantial compliance with those requirements afforded the defendant fair and just process." *In re Hall*, 143 Vt. 590, 596, 469 A.2d 756, 759 (1983). Indeed, the plea proceeding afforded defendant here was a far cry from "the total failure to comply" with the rule's procedural and substantive requirements that we have found fatal in other cases. *Morrissette*, 170 Vt. at 571 n.2, 743 A.2d at 1093 n.2.

Given defendant's responses to the court's colloquies, the signed plea and waiver forms, his representation by experienced and competent counsel, and his familiarity with criminal proceedings, we conclude that the court's actions here were sufficient to assure that defendant's plea was voluntary and fair. Simply put, our requirement of a "practical and functional application of V.R.Cr.P. 11 — not as a technical formula, but rather as a guideline to insure fairness to a defendant in the taking of a plea," — was met here. *State v. Ploof*, 162 Vt. 560, 563, 649 A.2d 774, 776-77 (1994).

*Affirmed.*