NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 107

No. 2014-246

| | |
|---|---|
| In re Derrick Brown | Supreme Court |
| | On Appeal from<br>Superior Court, Addison Unit,<br>Civil Division |
| | April Term, 2015 |

Robert A. Mello, J.

Matthew Valerio, Defender General, and Dawn Matthews, Prisoners' Rights Office, Montpelier, for Petitioner-Appellant.

Dennis M. Wygmans, Addison County Deputy State's Attorney, Middlebury, for Respondent-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** In this post-conviction-relief (PCR) proceeding, petitioner Derrick Brown appeals the decision of the Civil Division of the Addison Superior Court granting summary judgment to the State based on its determination that the criminal court complied with Vermont Rule of Criminal Procedure 11(e)(4) in deviating from the original plea agreement. We affirm.

¶ 2. The following facts are undisputed. In 2003, petitioner pleaded guilty to one count of aggravated sexual assault of a minor in violation of 13 V.S.A. §§ 3252, 3253 and one count of lewd and lascivious conduct with a child in violation of 13 V.S.A. § 2602. Petitioner agreed to sentences of three-to-ten years, all suspended, with one year to serve on the sexual-assault charge, and two-to-five years, all suspended, with one year to serve on the lewd-and-

lascivious-conduct charge. In total, petitioner agreed to a five-to-fifteen-year split sentence, with two years to serve, as well as the imposition of sex-offender probation conditions. Petitioner and the criminal court engaged in a colloquy, and the court accepted petitioner's guilty plea but reserved final sentencing until after the release of the presentence investigation report (PSI).

¶ 3. Prior to sentencing, petitioner's attorney moved to withdraw as counsel. At the motion hearing, petitioner's attorney explained that petitioner did not trust him and would not communicate with him. Petitioner told the court that his attorney did not return his phone calls, but he could not remember any other reasons for his dissatisfaction. The court denied the motion and directed petitioner and his attorney to attempt a reconciliation. At the sentencing hearing, the court rejected a second motion to withdraw by petitioner's attorney, stating that petitioner had not made a good-faith effort to repair the relationship and that his dissatisfaction with his counsel was not substantive.

¶ 4. During sentencing, the criminal court reviewed the PSI, which differed from the original plea agreement in two important aspects. First, the PSI recommended a three-to-twenty-year straight sentence instead of a five-to-fifteen-year split sentence. Second, the report recommended three additional probation conditions requiring that petitioner: (1) not use or possess pornographic material; (2) not possess any photographs of the victim or any male or female under the age of sixteen; and (3) allow his probation officer, or other corrections personnel, permission to search his residence and seize any nonprescription drugs, alcohol, pornography, or erotic material. The State acknowledged that these conditions were not part of the original plea agreement and stated, "I suppose, in theory, if the court was not willing to accept the plea agreement without those conditions . . . then that would be a change in the plea agreement and the defendant would have a right to withdraw from it."

¶ 5. Counsel for petitioner informed the court that if the sentence otherwise conformed to the original plea agreement then petitioner would have no objections to the special probation

2

conditions recommended in the PSI. The court questioned petitioner, his counsel, and the author of the PSI to verify that the recommendations had been explained to petitioner and that he understood them. The court then directly addressed petitioner:

> Court: And do you [petitioner] have any objection to any of these conditions that he's asking for?
>
> [Petitioner]: Besides if I'm in jail for more than five years, I'm going to get myself killed, no.
>
> Court: Okay. But the specific things that . . . we would be adding . . . .
>
> [Petitioner]: I could care less about . . . those.
>
> Court: Okay. But I want to make sure that you understand what they are, okay?
>
> [Petitioner]: No pornograph[y]—no pictures of [the] victim or [person] under age sixteen, no weapons or anything like that.
>
> Court: Well, actually weapons isn't one of them but . . . you were right on two of the three. The third one is that your probation officer or other people from corrections could search your house to see if you had any drugs, alcohol, pornography and so forth.
>
> [Petitioner]: That is one thing I do have a problem with, is in the original condition when this first started . . . alcohol was not one of the conditions.
>
> Court: Okay, so that's the only thing you are objecting to?
>
> [Petitioner]: Yes.

¶ 6. The court then discussed with petitioner his objection to the alcohol condition and ensured that this was the only condition petitioner opposed. Petitioner confirmed that it was. The court then reaffirmed petitioner's assent to the plea agreement. Petitioner stated that he was "willing to do the treatment and everything." The court asked petitioner if he was "asking [the court] to go ahead . . . with the deal [he] reached before," to which petitioner responded, "Yes." The court also verified that petitioner understood that if he did not engage in sex offender treatment he may end up serving the entire fifteen-year prison sentence.

3

¶ 7.    Finally, the court stated that it was going forward with the sentence as outlined in the original plea agreement, with the addition of the special probation conditions recommended in the PSI, minus the alcohol condition.  Petitioner inquired about the two special conditions, which he felt were contradictory.  The court explained the conditions and made sure that petitioner understood them; petitioner confirmed that he did.  The court directed the clerk to impose the five-to-fifteen-year split sentence with the two added conditions.

¶ 8.    In 2014, petitioner filed his PCR petition, alleging that the criminal court violated Rule 11(e)(4) when it failed to explicitly inform him that he had the right to withdraw his plea after the criminal court imposed the additional probation conditions.[1]  The parties filed cross-motions for summary judgment, and the PCR court granted summary judgment for the State, holding that the sentencing court complied with Rule 11 by conducting a thorough colloquy to ascertain petitioner's consent to the additional probation conditions.  The PCR court further held that the new conditions did not change the terms of the original plea agreement because that agreement "did not address those conditions."  The PCR court concluded that "the [sentencing] court was not required to permit [petitioner] to withdraw because the sentence imposed was consistent with the plea agreement."  Petitioner appealed.

¶ 9.    The sole issue on appeal is whether the sentencing court violated Rule 11(e)(4) by failing to explicitly inform petitioner of his right to withdraw from his plea agreement after the court imposed additional probation conditions.  We review summary judgment decisions de novo under the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party.  In re Hemingway, 2014 VT 42, ¶ 7, 196 Vt. 384, 97 A.3d 896.  Summary judgment will be granted "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Id.; see V.R.C.P. 56(a).  On a petition for PCR, the

---

[1]  Petitioner does not claim that the court violated Rule 11 because it deferred its decision on the plea agreement and waited for the PSI without informing petitioner that he could withdraw his plea if the plea agreement ultimately was rejected.  The record before us does not show what advice the criminal court gave petitioner at that time.

4

petitioner must establish "by a preponderance of the evidence that one or more fundamental errors rendered his conviction defective." In re Hemingway, 168 Vt. 569, 570, 716 A.2d 806, 808 (1998) (mem.). PCR is a limited remedy, and the petitioner bears "the burden of proving that fundamental errors rendered his conviction defective." Hemingway, 2014 VT 42, ¶ 7 (quotation omitted).

¶ 10. Rule 11 governs generally the entering of pleas by criminal defendants and provides a process to ensure that defendants entering guilty or nolo contendere pleas do so voluntarily and with full understanding of the consequences. Id. ¶ 12. Rule 11(e)(4) specifically provides the proper procedure the sentencing court must follow when rejecting a plea agreement:

> If the court rejects the plea agreement or defers decision upon it, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is or may not be bound by the plea agreement, pursuant to Rule 32(d) afford a defendant who has already pleaded the opportunity to then withdraw his plea, and advise the defendant that if he persists in his plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

See In re Berrio, 145 Vt. 6, 8, 481 A.2d 1057, 1058 (1984) (stating that when court rejects sentence set out in plea agreement, before it imposes greater sentence, it must, "consistent with basic notions of judicial fairness, afford the defendant an opportunity to withdraw his guilty or nolo plea"). When the sentencing court rejects the recommended sentence in the plea agreement, it "draws into question the voluntariness of the plea." State v. Belanus, 144 Vt. 166, 169, 475 A.2d 227, 228 (1984) (quotation omitted).

¶ 11. Petitioner claims that the sentencing court violated Rule 11 when, upon imposing new probation conditions, it failed to advise him personally of his right to withdraw his plea. Petitioner does not dispute that the court sought his consent to the additional probation conditions, but rather he argues that it failed to make an explicit statement to the effect of, "if you want to scrap the whole thing, you have a right to do that." We disagree with petitioner's

5

overly technical reading of Rule 11, as it "exalts ritual over reality." State v. Currier, 171 Vt. 181, 187, 758 A.2d 818, 822 (2000).

¶ 12.    In PCR proceedings, we consistently have looked for functional and substantial, rather than precise, compliance with Rule 11.  See In re Manosh, 2014 VT 95, ¶ 21, ___ Vt. ___, 108 A.2d 212 (explaining that "otherwise-thorough exchange with a defendant" satisfies Rule 11 where court "failed to specifically ask one of the prescribed questions but nonetheless had sufficient grounds for finding that the plea was voluntary"); Hemingway, 2014 VT 42, ¶ 8 (explaining that "[s]ubstantial, rather than exact, compliance with Rule 11 is usually sufficient"); In re Parks, 2008 VT 65, ¶ 11, 184 Vt. 110, 956 A.2d 545 (explaining that Rule 11 is satisfied if colloquy's shortcomings are technical in nature and sentencing court substantially complies with its Rule 11 responsibilities); In re Thompson, 166 Vt. 471, 474, 697 A.2d 1111, 1113 (1997) (stating that Rule 11 is not used as "technical formula, but rather as a guideline to insure fairness to a defendant in the taking of his plea" (quotation omitted)).   As we previously have emphasized, "we will not allow a procedural oversight to frustrate a plea where the court's substantial compliance with the rule affords the defendant fair and just process." Hemingway, 2014 VT 42, ¶ 8 (alteration omitted) (quotation omitted).  While none of our earlier cases involve Rule 11(e)(4) in a PCR proceeding, we see no reason to adopt a different standard in this case.[2]

¶ 13.    Although the parties and the PCR court rely on the same summary judgment record, they present two very different narratives of what occurred.  In petitioner's view, the criminal court rejected the plea agreement by adding the three probation conditions but failed to inform him of his resulting right to withdraw his guilty plea and go forward with the trial.  In the view of the State and the PCR court, based on the recommendations of the PSI, the parties reached a new, or amended, plea agreement incorporating the three probation conditions but

_____

[2]    In one early PCR case, In re Berrio, the issue of compliance with Rule 11(e)(4) was raised for the first time on appeal to this Court.  We considered Rule 11 compliance under a plain-error standard and reversed.  145 Vt. at 8, 481 A.2d at 1058.

retaining the same split sentence to serve.[3] Under this view, the obligation to inform petitioner of his right to withdraw his guilty plea did not arise because the court did not reject the plea agreement. We agree with the view of the State and the PCR court and conclude that, although the criminal court might have been more explicit in protecting petitioner's rights and explaining what it was doing, it substantially complied with Rule 11.

¶ 14. We base our conclusion on several facts. The criminal court did not reject the original plea agreement or state what it would do if petitioner insisted on the terms of that agreement. At the start of the sentencing hearing, counsel for petitioner stated that petitioner would agree to the additional conditions so long as the content of the plea agreement otherwise remained unaltered. The criminal court then engaged petitioner in a lengthy colloquy—which particularly was appropriate given the rocky relationship between petitioner and his attorney—to verify that he consented to the new probation conditions.

¶ 15. The record demonstrates that petitioner was a willing and thoughtful participant in the colloquy, making a cogent objection to the alcohol condition and pointing out the conditions he felt were contradictory. The court repeatedly asked petitioner if he understood the conditions and asked that he state any objections, and the court indicated its flexibility in agreeing to strike the alcohol condition. Importantly, the court expressly asked petitioner if he was willing to go forward with the original plea agreement, to which petitioner responded, "Yes." While the court never explicitly informed petitioner of his right to withdraw his plea, this lengthy exchange indicated to petitioner that he was not required to agree to the new conditions and that he had a choice in going forward with his original plea. The court did not agree to or implement the additional probation conditions until the exchange with petitioner was completed. Rule 11

---

[3] The PCR court also adopted an alternative rationale, relying upon State v. Thomas, 2010 VT 107, 189 Vt. 106, 14 A.3d 961, in which we held that adding a restitution requirement not mentioned in the plea agreement was not a rejection of the plea agreement under Rule 11(e)(4). Id. ¶ 4. The court stated that Thomas governed because the special sex offender probation conditions were not addressed in the plea agreement but were reserved for later determination. In view of our decision, we do not consider this alternative holding.

mandates no precise language or magic words; rather, it mandates an outcome. See McCarthy v. United States, 394 U.S. 459, 465 (1969) (explaining that corresponding federal rule mandates no particular procedure but serves as means to achieve required outcome). We conclude that the court here achieved that outcome.

¶ 16. We are not persuaded by petitioner's reliance on State v. Bergerson, 144 Vt. 200, 475 A.2d 1071 (1984), and State v. Belanus, 144 Vt. 166, 475 A.2d 227, as these direct-appeal cases show no compliance with Rule 11(e)(4). In Bergerson, the defendant entered into a plea agreement in which he would pay restitution and avoid jail time, but the court reserved its decision on sentencing until viewing the PSI. At sentencing, the court imposed a harsher sentence, including jail time. Upon the defendant's surprise, the court stated, "I would have thought you must have known he could get a sentence . . . . I didn't promise anything about . . . all the sentence being suspended." 144 Vt. at 202, 475 A.2d at 1073. We held that the court violated Rule 11(e)(4) by failing to provide the defendant an opportunity to withdraw his plea. Id. at 203, 475 A.2d at 1073.

¶ 17. Similarly, in Belanus, the sentencing court imposed additional jail time than what was agreed to in the plea agreement. Again, the court engaged in no discussion with the defendant about the amended sentence, and, when the defendant moved to withdraw his plea, the court denied the motion. We held that it was an abuse of the court's discretion to deny the defendant's motion. 144 Vt. at 170, 475 A.2d at 229. Neither Bergerson nor Belanus presents a situation where, as here, the record indicates that the plea agreement was amended and the petitioner explicitly agreed to the new sentence imposed by the court.

¶ 18. Petitioner further argues that, because of the fractious relationship with his attorney, the additional recommendations in the PSI were not explained thoroughly before sentencing and that the court therefore needed to explicitly state to petitioner that he could withdraw his plea because it was possible, if not likely, that petitioner's counsel did not explain

that result to him.[4] This argument lacks merit. Petitioner's attorney was present when the conditions were explained prior to the sentencing hearing and was satisfied that petitioner understood and accepted the additional conditions. The court specifically asked counsel about petitioner's understanding of the recommendations in the following exchange:

> Court: So, although your client hasn't affirmatively chosen to speak with you, you were in the room when he and [the PSI author] went over this?
>
> [Counsel]: Yes, and in fact I came in just as [petitioner] was reading the recommendation specifically of [the PSI author's] request and he did not indicate that he would object to any of those conditions being imposed.

We do not see how the relationship between petitioner and his attorney in any way undermined petitioner's understanding of the conditions and his agreement to them.

¶ 19. We therefore hold that the summary judgment record showed that there was no disputed issue of material fact and that the trial court correctly concluded that the State was entitled to judgment as a matter of law because the trial court substantially complied with Rule 11(e)(4).

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[4] The State argues that this issue was not preserved for appeal. Petitioner specifically raised this issue in his motion for summary judgment. We note, however, that there is no evidence in the record that counsel did not advise petitioner of the right.