Filed 01/30/26

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00742

---

Adam Cijka v State of Vermont

---

**Decision on Cross-Motions (Nos. 6 and 11) for Summary Judgment**

In this postconviction relief (PCR) case, Petitioner Adam Cijka seeks to vacate numerous convictions entered following guilty pleas at separate change-of-plea hearings on July 25, 2018, and July 31, 2024. He claims a wide variety of Rule 11 violations, involuntariness generally as to the 2018 hearing due to alleged confusion over the terms of his plea agreement, and rampant ineffective assistance of counsel by all his defense attorneys. He also claims that the 2018 sentencing judge entered an illegal sentence in violation of both statute and the operative plea agreement. The parties have filed cross-motions for partial summary judgment. The State's motion exclusively addresses the single Rule 11 violation claimed to have occurred at the 2024 change-of-plea hearing.[1] Mr. Cijka's motion addresses all claims raised in the third amended complaint other than ineffective assistance of counsel and a claim that the profligate errors of the 2018 proceeding somehow fundamentally undermined his completely separate sentencing the 2024.[2]

Summary judgment shall be granted when the moving party shows that there is no genuine issue as to any material fact, "and the movant is entitled to a judgment as a matter of law." V.R.C.P. 56(a). Although the court gives the nonmoving party "the benefit of all reasonable doubts and inferences in determining whether there is a genuine issue of material fact, the nonmovant bears the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 14, 209 Vt. 433 (quotation omitted).

"On a petition for PCR, the petitioner must establish 'by a preponderance of the evidence that one or more fundamental errors rendered his conviction defective.' PCR is a limited remedy, and the petitioner bears 'the burden of proving that fundamental errors rendered his conviction defective.'" *In re Brown*, 2015 VT 107, ¶ 9, 200 Vt. 116 (citations omitted).

---

[1] The State's motion addresses both claims of the second amended complaint vis-à-vis the 2024 proceeding: ineffective assistance and a Rule 11 violation. After the State filed its motion, Mr. Cijka amended his complaint to withdraw this ineffective assistance claim (the ineffective assistance claims vis-à-vis the 2018 proceeding remain in the case). Accordingly, the court treats the State's motion as addressing the Rule 11 violation only, as asserted in the third amended complaint.

[2] While the State filed no opposition to Mr. Cijka's motion, the court does not take its silence as a concession or stipulation that he is entitled to relief. The parties to a PCR case cannot simply agree to relief; a substantive basis for PCR must be established, one way or another. See *Palmer v. Furlan*, 2019 VT 42, ¶ 14, 210 Vt. 375 (Eaton, J., concurring) ("We have long cautioned that the PCR statutes 'are not intended as general sentence review statutes' and '[t]hey do not permit a successful attack on a valid sentence.'").

The material facts, to the extent presented, are undisputed. They consist largely of the procedural history of the various criminal cases, the plea agreements, and the transcripts of the change-of-plea and sentencing hearings, to which the court refers below as contextually required.

The 2018 change-of-plea hearing focused on a "global" plea agreement resolving numerous dockets and charges, appearing in writing on 5 "notice of plea agreement" forms. The agreement contemplated guilty pleas to the following charges:

Form 1
1212-11-16 Rdcr — 3 counts of uttering a forged instrument (UFI)

Form 2
1402-2-16 Rdcr — 1 count of UFI
1131-10-16 Rdcr — 2 counts of violating conditions of release (VCR)

Form 3
1255-11-16 Rdcr — 1 count of UFI
1114-10-16 Rdcr — 1 count of possession of stolen property (felony) (PSP(f))
1196-10-16 Rdcr — 1 count of UFI

Form 4
677-6-18 Rdcr — 2 counts of burglary

Form 5
147-2-17 Rdcr — 1 count of identity theft (first offense)

The 2024 change-of-plea hearing resolved 23-CR-12307 and contemplated a plea of guilty to 1 count of burglary.

*Claimed confusion regarding the 2018 plea agreement*

Mr. Cijka argues that his 2018 pleas were involuntary. His argument is twofold. First, he argues that the plea agreement itself was exceptionally confusing, and that confusion was compounded by the complex exchange between the judge and lawyers at the beginning of the hearing as they attempted to clarify it, at the end of which Mr. Cijka could not reasonably have been expected to understand any of it. He then reframes the same argument in the context of the myriad other errors that he now detects at the hearing (and in relation to his sentencing) to conclude that, in combination, his pleas were not knowing, intelligent, and voluntary. The court addresses the first argument only in this section. The others are addressed separately below.

"In assessing voluntariness of the plea, we consider all the circumstances." *In re Hemingway*, 2014 VT 42, ¶ 15, 196 Vt. 384. "It is axiomatic that plea agreements 'are contractual in nature and are interpreted according to contract law.'" *State v. Careau*, 2016 VT 18, ¶ 11, 201 Vt. 322.

The plea agreement appears in the 5 separately filled out forms described above. The agreement was "global" in the sense that the parties agreed to an aggregate sentencing range that could be no greater than a certain minimum and maximum incarcerative term, leaving the judge to fashion an effective sentence no greater than those terms. Forms 1–4 state in the "other" box: "The State is capped at arguing for a controlling sentence not to exceed a minimum sentence of 4 year [sic] and a maximum sentence not to exceed 14 years. The defense may argue for any lawful sentence." The agreement does not limit the judge's ability to impose a term of probation or an entirely probationary sentence, and, with one

exception, it does not limit the judge's ability to impose sentences as concurrent or consecutive to one another. The exception is Form 5. Its "other" box says: "State is capped at 4–14 years to serve, concurrent to defendant's pending . . . charges." Whereas on Forms 1–4 neither option for a *concurrent* nor *consecutive* sentence is selected, on Form 5 *concurrent* is circled.

Judges have "wide discretion to fashion appropriate sentences" within the terms of applicable statutes and accepted plea agreements. *State v. Lumumba*, 197 Vt. 315, 327 (2014). It is clear on the face of this agreement that the aggregate sentence could not exceed 4–14 years, could include a term of probation, and the various subsidiary sentences could be either concurrent or consecutive, but the sentence for the Form 5 conviction (identity theft) had to be concurrent.

There was confusion, however. The parties agreed that the State would be further limited as to what it could argue in relation to certain of the subsidiary sentences. For example, the parties agreed that in docket 1255-11-16 Rdcr, the State could not argue for a sentence exceeding 4–10 years for the count of uttering a forged instrument, while (as with all charges) Mr. Cijka retained the right to argue for any lawful sentence. While not confusing on its own, the prosecutor had indicated these argumentation limits on the Forms by writing them in in the *min.* and *max.* areas as though the limits themselves were agreed upon sentences. This was the only confusion over the terms of the plea agreement. It was quickly clarified at the beginning of the July 25, 2018, change-of-plea hearing. The court said after brief discussion with the parties, "That [referring to the spaces for individual minimums and maximums] should have been blank then." He indicated that he would cross those entries out and make other indications on the Forms for clarification purposes. He then asked Mr. Cijka: "Is that your understanding of the agreement, Mr. Cijka?" To which Mr. Cijka replied, "Yes, Your Honor."

Based on the plain language of the plea agreement Forms and the transcript of the change-of-plea hearing, there is no indication whatsoever that the State's mistake in entering the minimums and maximums on the Forms confused anyone, the clarification came quickly, and Mr. Cijka expressly said he understood it. His argument now that the agreement and the brief back-and-forth of clarification were so complex and confusing that he could not possibly have understood what was going on is not well taken.[3]

*Rule 11(f) violations as to 1212-11-16 Rdcr and 23-CR-12307*

Mr. Cijka next argues that the court failed to establish admitted factual bases for: (a) Count 1 of UFI in Docket 1212-11-16 Rdcr insofar as, he argues, he never admitted to *uttering* or *publishing* the relevant instrument, and (b) the burglary charge in 23-CR-12307 because, he argues, he did not admit that he was "not licensed or privileged" to break into the building he burglarized. These arguments have no merit.

As the Vermont Supreme Court has explained:

Rule 11(f) requires the change-of-plea court to ensure that the defendant understands and admits to a factual basis for each element of the offenses charged. By making this inquiry, the court ensures that a defendant's plea is truly voluntary and that a reviewing court has the ability to review the record. Absent such an inquiry, a defendant may not "completely understand the elements of the charge or realize that [he or she] has a valid

---

[3] To the extent that Mr. Cijka argues that he could not possibly have understood that the sentence might include a term of probation, which it eventually did, the argument is not persuasive. The agreement nowhere limited the court from imposing a term of probation, and it expressly entitled Mr. Cijka to argue in favor of "any lawful sentence," which would encompass one with a term of probation. His counsel at the sentencing hearing in fact did seek a probationary sentence.

defense" and may enter a false guilty plea. Rule 11(f) is distinct from the other subsections of Rule 11; thus, even if a defendant knowingly and voluntarily enters into a plea, Rule 11(f) requires a court to independently establish that a factual basis for the plea exists.

*In re Gabree*, 2017 VT 84, ¶ 9, 205 Vt. 478 (citation omitted); see *id*. ¶ 10 ("There is no particular formula to satisfy this standard.").

The crime of uttering a forged instrument is described at 13 V.S.A. § 1802 as follows: "A person who utters and publishes as true a forged, altered, or counterfeited record, deed, instrument, or other writing mentioned in section 1801 of this title, knowing the same to be false, altered, forged, or counterfeited, with intent to injure or defraud a person, shall be imprisoned not more than 10 years and fined not more than $1,000.00, or both." Thus, forgery or possession of the forged instrument is not enough; the instrument must be *uttered*. Mr. Cijka does not explain what he thinks uttering means in this context, but he asserts that he did not admit to doing it, whatever it is.

Uttering in this context means "presenting a false or worthless instrument with the intent to harm or defraud. — Also termed *uttering a forged instrument*." Black's Law Dictionary 1545 (7th ed. 1999); see also *State v. Medina*, 355 P.3d 108, 114 (Or. 2015) ("At common law, '[a] forged instrument [wa]s uttered when it [wa]s offered to another as genuine, without regard to whether it [wa]s so accepted.'" (citation omitted)); *Miller v. State*, 693 N.E.2d 602, 604 (Ind. Ct. App. 1998) ("Uttering is the offering of a forged instrument, knowing it to be such, with a representation that it is genuine, and with an intent to defraud." (citation omitted)). In other words, one must not only create or possess the false instrument, one must attempt to negotiate it.

The hearing transcript is plain that Mr. Cijka admitted to the fact of the utterance:

THE COURT: The charge in docket number 1212 that you'd be pleading to in Count number I alleges that on or about August 1 of 2016 that you *uttered and published* as true an altered personal check that you knew that same to be altered with the intent to injure or defraud a person, to wit, *when you presented to Heritage Federal Credit Union an altered personal check* from the checking account of Marie Pennington (ph.) in the amount 761 dollars that was completed and endorsed as payable to the order of yourself. The maximum punishment of ten years, 1,000 dollars, or both. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: What plea do you enter to that charge?

THE DEFENDANT: I enter a plea of guilty.

THE COURT: *Do you agree that as alleged, that [is] what happened*; that on August 1st you had a check, you altered that personal check from the account of Mr. Pennington? When you did it, you knew that you were intending to get money to which you weren't entitled. You knew it was altered. And you would admit that the facts established each of the elements of this offense?

THE DEFENDANT: Yes, Your Honor.

July 25, 2018, Transcript at 7–8 (emphasis added). The court described the act of the utterance in the allegations and then asked Mr. Cijka if what was alleged was what happened. He said yes. That is sufficient. There is no Rule 11(f) violation.

As for docket 23-CR-12307, Mr. Cijka pleaded guilty to 1 count of burglary. Burglary is described as: "A person is guilty of burglary if he or she enters any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault, or unlawful mischief." 13 V.S.A. § 1301(a). So, there must be an entry without permission. At the hearing, the court mentioned that there must be a lack of permission when asking whether Mr. Cijka understood the nature of the charge, which he did. The following exchange then occurred:

THE COURT: And I'm going to ask the State to put the factual basis for the charge . . . on the record. And I'm going to ask you to listen carefully, Mr. Cijka, because I am going to ask you if you agree with those facts. Attorney Bevere.

MR. BEVERE: Yes, Judge. On August 25th of 2023, officers were dispatched for an alarm at Forensic Consultation and Counseling Services at 135 Granger Street in Rutland City. After they arrived, they located an unsecured window in which the air conditioning unit had been pushed inside the building from the outside. Security footage showed an individual breaking in and carrying away a safe from one of the offices. They spoke with the—one of the building managers who worked at Forensic Consulting, who indicated that the person on the video appears to be the defendant, Mr. Cijka, who was a patient there. Subsequent investigation showed that force was made by pushing the air conditioning in, going inside. One of the office doors was forced open, in which case then a safe containing blood pressure medication was taken and removed from the building. Officers believed to recognize Mr. Cijka as a suspect in the video. They spoke with him, and eventually interviewed and admitted [sic] to entering the building, forcing the door open, and taking the safe.

THE COURT: Do you agree that that's what happened, Mr. Cijka?

THE DEFENDANT: Yes, Your Honor.

July 31, 2024, Transcript at 9–10. With this, Mr. Cijka plainly admitted that he broke into the building through a window by pushing in an air conditioner, forced open an office door, and made off with a safe, all of which set off an alarm to which the police responded. Mr. Cijka presumably would have the court believe that he may have believed that he had permission to so enter the building. While Mr. Cijka does not expressly say, "And I knew I didn't have permission to do that," he admitted to brazenly breaking into the building through a window obviously not meant to be used for ingress and egress with the purpose of stealing a safe, all of which triggered an alarm. No reasonable person would have thought he had permission to do so. These facts are sufficient to establish a lack of permission. There is no Rule 11(f) violation.

*Rule 11(c)(1) violations as to 1212-11-16 Rdcr and 147-2-17 Rdcr*

Rule 11(c)(1) requires the court to satisfy itself that a defendant understands the nature of the charge to which he is pleading. Mr. Cijka argues that the court failed to do so as to the third count of UFI in Docket 1212-11-16 Rdcr and the sole count of identity theft in Docket 147-2-17 Rdcr.

As the Court has explained:

Generally, post-conviction relief is not available for "technical or formal violations of Rule 11." Substantial, rather than exact, compliance with Rule 11 is usually sufficient to achieve essential fairness and avoid reversible error. In post-appeal PCR cases subject to evidentiary hearings, the general rule is also that petitioners complaining of Rule 11 noncompliance must show that the trial court's failure to adhere to Rule 11 was prejudicial in fact. "[W]e will not allow a procedural oversight to frustrate a plea where the court's substantial compliance with the rule affords the defendant fair and just process."

*In re Hemingway*, 2014 VT 42, ¶ 8, 196 Vt. 384 (citations omitted).

With regard to Docket 1212-11-16 Rdcr, the court substantially complied with Rule 11(c)(1). For context, at the hearing, Mr. Cijka pleaded guilty, across dockets, to 5 counts of UFI. It is true that the court, after explaining the nature of the third such count in Docket 1212-11-16 Rdcr, did not stop to ask, "Do you understand that?" However, all three counts were virtually identical and extremely straightforward. They involved presenting forged checks, in different amounts, to Heritage Federal Credit Union on specific dates for amounts certain. Mr. Cijka plainly indicated that he understood the nature of the first two charges, and he indicated no similar lack of understanding as to the third count. Nor did he express any lack of understanding as to any of the other UFI counts. Considering the totality of the circumstances, there is no reasonable way to conclude that Mr. Cijka did not understand the nature of this charge. Nor does Mr. Cijka claim any prejudice, and none is reasonably inferable.

As to Docket 147-2-17 Rdcr, substantial compliance again is evident in the transcript. The court described the nature of the charge and then paused to ask, "What is the maximum punishment with this if you're not pursuing a habitual?" Mr. Cijka *himself* responded (accurately), "Three years." The court then cited the statute, and Mr. Cijka's attorney stated his belief: "I think it is three years." Mr. Cijka *himself* then added: "The maximum penalty is three years or I believe a 1,000 dollar fine." Mr. Cijka then clearly entered a guilty plea and expressly agreed to the factual basis for the plea. Mr. Cijka did not expressly say, "I understand the nature of the charge," but he clearly was familiar with the statute, pleaded guilty, and admitted the factual basis for the plea. In these circumstances, that is sufficient for Rule 11(c)(1) purposes. Again, Mr. Cijka does not claim any prejudice, and none is reasonably inferable.

*Whether Mr. Cijka pleaded guilty to certain counts*

Mr. Cijka argues that for several charges at issue in the 2018 change-of-plea hearing to which he had agreed to plead guilty, he did not do so. The affected charges include the following:

1212-11-16 Rdcr — UFI (Count 2)
1402-2-16 Rdcr — UFI
1255-11-16 Rdcr — UFI
1114-10-16 Rdcr — PSP(f)
1196-10-16 Rdcr — UFI

Mr. Cijka's argument as to these counts (repeated as to each one) is this *in total*: "At no point during its brief colloquy with Mr. Cijka regarding this count, or at any point during the change-of-plea hearing, did the Court ask Mr. Cijka to enter a plea on this count, and he never did."

As to each of these counts, the transcript reveals that the court explained the nature of each charge, Mr. Cijka then said that he understood, and then Mr. Cijka agreed to the factual basis for each plea. It is wholly apparent in context that Mr. Cijka was well aware that he was pleading guilty to those charges, which were clearly so indicated on the plea agreement forms he signed.

This case is similar to the relevant portion of *In re Lewis*, 2021 VT 24, 214 Vt. 451.  There, the Court explained as follows:

> Rule 11 does not prescribe a specific form of colloquy, and it does not explicitly require that a defendant verbally state "I plead guilty" or a similar phrase.
>
> Although courts should elicit an express verbal guilty plea to each count to which a defendant pleads guilty, the failure to do so does not necessarily invalidate the ensuing conviction.  In general, "the strongly preferred practice is to specifically inquire of the defendant whether [the defendant] in fact pleads guilty."  But courts have held that the absence of a statement that the defendant intends to plead guilty "after each charge is inconsequential where the circumstances compel the conclusion that the defendant did enter a plea of guilty and that the plea was accepted by the judge."  We agree that where a plea is otherwise knowing, intelligent, and voluntary, the court's failure to elicit an express verbal guilty plea from the defendant does not invalidate the ensuing conviction when there is no doubt that the defendant intended to plead guilty and understood that they were doing just that.

*Id.* ¶¶ 13–14 (citations omitted).  In other words, "Yes, I plead guilty," are not magic words without which there can be no conviction.  In this case, that is Mr. Cijka's only argument.  He nowhere attempts to explain how the circumstances were such that they could fail to "compel the conclusion" that he pleaded guilty to the relevant offenses.  Nor does he assert that had he been more expressly asked what his pleas to the relevant offenses would have been, that they would have been something other than guilty.

Mr. Cijka plainly knew that he was at the change-of-plea hearing to enter guilty pleas to those charges set out in his written plea agreement.  That agreement was "global."  It was one agreement as to the potential total effective sentence.  It required guilty pleas to all the subsidiary offenses.  Mr. Cijka plainly knew that.  He plainly understood the nature of the charges and admitted to the factual bases.  He was represented by counsel.  Nothing indicates any apprehension to pleas of guilt consistent with the written agreement.  This record leaves "no doubt that the defendant intended to plead guilty" to the relevant offenses.

*The 2018 sentencing*

At the November 28, 2018, sentencing, the court sentenced Mr. Cijka as follows:

Form 1
1212-11-16 Rdcr Count 1 UFI — 24 mos. to 10 yrs. concurrent
1212-11-16 Rdcr Count 2 UFI — 24 mos. to 10 yrs. concurrent
1212-11-16 Rdcr Count 3 UFI — 24 mos. to 10 yrs. concurrent

Form 2
1402-2-16 Rdcr Count 1 UFI — 30 mos. to 10 yrs. concurrent
1131-10-16 Rdcr Count 1 VCR — 0 to 6 mos. concurrent
1131-10-16 Rdcr Count 2 VCR — 0 to 6 mos. concurrent

Form 3
1255-11-16 Rdcr UFI — 24 mos. to 10 yrs. concurrent
1114-10-16 Rdcr PSP(F) — 30 mos. to 10 yrs. concurrent

1196-10-16 Rdcr Count 1 UFI — 30 mos. to 10 yrs. concurrent

      Form 4
677-6-18 Rdcr Count 1 burglary — 2 to 10 yrs. concurrent
677-6-18 Rdcr Count 2 burglary — 2 to 10 yrs. concurrent

      Form 5
147-2-17 Rdcr Identity theft — 18 mos. to 4 yrs. consecutive, all suspended, with indefinite probation

In the aggregate, this amounts to an initial to-serve sentence of 30 mos. to 10 yrs., followed by probation and, in the event of a violation, at most another 4 yrs. to serve (the consecutive sentence). As the sentencing court noted, if the entire suspended sentence were imposed, the total incarceration would amount to 4 to 14 years, consistent with the plea agreement.

There is a problem though. Mr. Cijka in 147-2-17 Rdcr had been charged with a first violation of 13 V.S.A. § 2030 (identify theft). Section 2030(f) provides: "A person who violates this section shall be imprisoned for not more than three years or fined not more $5,000.00, or both. A person who is convicted of a second or subsequent violation of this section involving a separate scheme shall be imprisoned for not more than 10 years or fined not more than $10,000.00, or both." The maximum sentence on a first violation is 3 years. That fact was expressly discussed at the change-of-plea hearing. The court, however, sentenced him to a 4-year max. At the sentencing hearing, when the judge did that, no one objected.

The other problem with the identity theft sentence is that the court imposed it consecutive to all his other sentences. The written plea agreement expressly required that the identity theft sentence be concurrent to all his other sentences. The court did generally inquire at sentencing as follows:

THE COURT: . . . Is there any objection from defense counsel or the State if the Court utilizes a consecutive component as long as it doesn't exceed four to fourteen?

MR. SULLIVAN: From the State's perspective, there's no objection to that.

MR. DAVIS: No objection.

November 28, 2018, transcript at 59. This was a general inquiry not specifically focused on the agreed upon terms appearing on Form 5, and it did not reflect awareness that, if the identity theft sentence were consecutive, that would violate the terms of the plea agreement or at least reflect an amendment to that agreement. But apart from the above, there was no talk of amending the agreement, and Mr. Cijka did not agree to any such amendment.

It is thus clear that the identity theft sentence exceeded the statutory maximum *and* violated the plea agreement.

To the extent that Mr. Cijka may have argued that probation on an indefinite basis also violates the probation statutes, it does not. The probation statute provides: "The term of probation for nonviolent felonies shall not exceed four years or the statutory maximum term of imprisonment for the offense, whichever is less, unless the court, in its sole discretion, *specifically finds that the interests of justice require a longer or an indefinite period of probation*." 28 V.S.A. § 205(a)(3)(A) (emphasis added). The probation period thus was statutorily capped at 3 years (the underlying maximum term) unless the court

made a specific finding that the interests of justice required an indefinite term.  The court did exactly that.  See November 28, 2018, transcript at 75–76.

The court notes that, focusing on the identity theft sentence in isolation, it is an "illegal sentence" that must be corrected or vacated and resentenced.  See *Coyle v. Hofmann*, 2009 VT 46, ¶¶ 9–10, 186 Vt. 525 (explaining that illegal sentence may be corrected by the PCR court or remanded to the criminal court for resentencing).  The court further notes, however, that because the identity theft sentence was one component of a global settlement, and the sentencing court relied on the subsidiary sentences to craft a thoughtful effective sentence, the entire sentence imposed on November 28, 2018, likely cannot be corrected by the PCR court and probably needs to be vacated and this case remanded to the criminal division for resentencing.

The court further notes that, thus far, there is no basis for the ultimate relief sought by Mr. Cijka, vacating his convictions altogether.  There are remaining claims, however, that have not yet been resolved.

## Order

For the foregoing reasons, the State's motion for partial summary judgment is granted.  Mr. Cijka's motion for summary judgment is granted in part and denied in part.  This case will be set for a prompt status conference to address next steps.

Electronically Signed on: Friday, January 30, 2026 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge